Argued and submitted May 27, reversed and remanded in part; otherwise affirmed
December 22, 1999

Peter GLADHART
and Emily Gladhart,
husband and wife,
Wild Plum Farms, Inc.,
an Oregon corporation,
dba Winter's Hill Vineyard,
*Appellants,*

*v.*

OREGON VINEYARD SUPPLY COMPANY,
an Oregon corporation,
and Mark Benoit,
*Respondents,*

*and*

STATE OF OREGON,
*Defendant.*

(CV97346; CA A100805)

994 P2d 134

James H. Marvin argued the cause for appellants. With him on the briefs were Eric Carter, and Marvin, Chorzempa & Associates, P.C.

Thomas M. Christ argued the cause for respondents. With him on the briefs was Mitchell, Lang & Smith.

Scott A. Shorr, and Stoll, Stoll, Berne, Lokting & Shlachter, P.C., Portland, filed a brief *amicus curiae* for Oregon Trial Lawyers Association.

Before Edmonds, Presiding Judge, and Deits, Chief Judge,* and Armstrong, Judge.

EDMONDS, P. J.

---

* Deits, C. J., *vice* Warren, S. J.

## EDMONDS, P. J.

Plaintiffs appeal from an ORCP 67 B judgment dismissing their claims against defendants Benoit and Oregon Vineyard Supply Company.[1] This case is about which statutes of limitations apply to plaintiffs' claims arising out of the purchase of grape plants from defendants. We reverse, in part, and otherwise affirm.

In describing the parties' underlying dispute, we state the facts as alleged in plaintiffs' amended complaint: Plaintiffs allege that, in February 1991, they purchased 3,200 grape plants from defendants that they then planted in their existing vineyard. The plants were "guaranteed" to be free of phylloxera, a "microscopic aphid" that lives on grape vine roots. "Phylloxera infestations cause substantial damage to a vineyard including decreased grape production in early years and the death of the grape vines as the infestation progresses." In September 1997, plaintiffs filed their original complaint in which they alleged that the plants that they had purchased from defendants were infested with phylloxera. This appeal is from the dismissal of plaintiffs' claims against defendants in their amended complaint under ORCP 21. That complaint alleges separate claims based on the following theories of recovery: (1) negligence *per se*; (2) negligence; (3) breach of contract; (4) products liability; (5) breach of express warranty; (6) breach of the implied warranty of fitness for a particular purpose; (7) breach of the implied warranty of merchantability; (8) negligent misrepresentation; and (9) breach of an express warranty under ORS chapter 72.

Defendants moved to dismiss each of plaintiffs' claims pursuant to ORCP 21 A(9) on the ground that they were filed after the four-year statute of limitations in ORS 72.7250 had run, or, in the alternative, that they were filed after the six-year statute of limitations in ORS 12.080 had run. Defendants also moved to dismiss several claims under ORCP 21 A(8) on the ground that they failed to allege facts

---

[1] Plaintiffs brought their complaint against Oregon Vineyard Supply Company, Mark Benoit and the State of Oregon. Plaintiffs appeal from a judgment of dismissal in favor of Oregon Vineyard Supply Company and Mark Benoit. Thus, the State of Oregon is not a party to this appeal. For purposes of this opinion, the term "defendants" refers to Oregon Vineyard Supply Company and Mark Benoit.

sufficient to constitute a claim. In its letter opinion, the trial court ruled on the motions:

"I have reviewed defendants' motions under ORCP 21. The transaction described in plaintiffs' complaint is governed by ORS 72.1010 *et seq.* (Uniform Commercial Code-Sales). Under ORS 72.7250, a disappointed buyer of goods must commence an action within 4 years from the date the breach occurs. Plaintiffs allege that they were sold defective grape plants. Consequently the breach occurred upon sale of the plants. ORS 72.7250(2) provides that the aggrieved party's lack of knowledge of the breach does not toll the running of the statute of limitations. The purported warranty *i.e.* 'phylloxera free grape plants' does not *explicitly extend* to future performance of the goods. ORS 72.7250(2). Plaintiffs' claims are time-barred. Defendants' first motion is granted. The balance are moot." (Emphasis in original.)

Accordingly, the trial court entered a judgment dismissing plaintiffs' claims against defendants.

On appeal, plaintiffs make two assignments of error. First, they contend that "[t]he court erred in ruling that '[t]he transaction described in plaintiffs' complaint is governed by ORS 72.1010 *et seq.*'" Specifically, plaintiffs argue:

"The [Uniform Commercial Code's] UCC's statute of limitations found in ORS 72.7250 does not bar Plaintiffs' negligence *per se*, negligence, negligent misrepresentation, product liability, nor breach of warranty claims. The UCC specifically limits its scope so as to not impair or repeal statutory causes. In fact, it explicitly excludes from its purview, statutes regulating sales to consumers and farmers. Consequently, the UCC is not so pervasive as to bar Plaintiffs' product liability claim, nor its negligence *per se* claim which is based upon a statute that regulates the sale of feed, fertilizers, and seeds. The appropriate statute of limitations for these claims is the product liability statute of limitations, ORS 30.905, and arguably ORS 12.110 for the negligence *per se* claim. As each of those statutes provides for a two year period which does not begin to run until Plaintiffs reasonably knew or should have know[n] of the injuries suffered, and Plaintiffs did not discover their injuries until October of 1995, Plaintiffs timely filed their lawsuit. Thus[,] the trial court must be reversed[,] and this case remanded for trial.

"The Oregon products liability statute, ORS 30.905, is also the applicable statute of limitations for Plaintiffs' negligence, strict liability, and breach of warranty claims, as such claims are deemed product related. Therefore, Plaintiffs' timely filed these claims, and this case must be reversed and remanded.

"Alternatively, the applicable statute of limitations for all of Plaintiffs' claims is ORS 12.080(3) which applies to actions concerning interference or injury to real property.[2] Because Plaintiffs seek to recover for the decimation of their entire vineyard, real property, ORS 12.080(3) is controlling. This statute provides a six year limitation and includes the 'discovery rules.' As explained above, given the benefit of the 'discovery rule' Plaintiffs have timely filed. Thus, the trial court must be reversed[,] and this case remanded for trial.

"Most importantly[,] Plaintiffs' negligence *per se*, negligence, negligent misrepresentation, and product liability claims do not sound in contract. These claims sound in tort. As such, the UCC statute of limitations cannot be applied to these claims, the tort statute of limitations must be applied, and this case must be reversed and remanded for trial."

Second, plaintiffs assert that the trial court erred in ruling that ORS 72.7250 bars plaintiffs' Uniform Commercial Code warranty claims because the warranties extended to future performance. Defendants dispute the contention that any warranties made by them extended to future performance. They counter that the Uniform Commercial Code statute of limitations, ORS 72.7250, applies to all of plaintiffs' claims and that, because plaintiffs did not file their complaint within four years of the delivery of the grape plants, their claims are time barred.

■ ■ We review the trial court's dismissal pursuant to ORCP 21 A(9) "to determine whether the pleading on its face shows that the action was not timely filed." *Allen v.*

---

[2] ORS 12.080 provides, in part:

"(3) An action for waste or trespass upon or for interference with or injury to any interest of another in real property, excepting those mentioned in ORS 12.050, 12.060, 12.135, 12.137 and 273.241; * * *

"* * * * *

"shall be commenced within six years."

*Lawrence*, 137 Or App 181, 186, 903 P2d 919 (1995), *rev den* 322 Or 644 (1996). "[W]e assume the truth of all allegations, as well as any inferences that may be drawn, and view them in the light most favorable to the nonmoving party." *Jaqua v. Nike, Inc.*, 125 Or App 294, 296, 865 P2d 442 (1993).

■　　We begin by determining whether defendant's sale of grape plants is governed by ORS chapter 72. ORS 72.1020 provides:

> "Unless the context otherwise requires, ORS 72.1010 to 72.7250 apply to transactions in goods; they do not apply to any transaction which although in the form of an unconditional contract to sell or present sale is intended to operate only as a security transaction nor do ORS 72.1010 to 72.7250 impair or repeal any statute regulating sales to consumers, farmers or other specified classes of buyers."

"Goods" are defined as "all things * * * which are moveable at the time of identification to the contract for sale." ORS 72.1050(1). A "contract for sale" includes a present sale of goods, which consists of passing title "from the seller to the buyer for a price." ORS 72.1060(1). We hold that the sale of the grape plants as alleged in plaintiffs' complaint was a "contract" for the sale of "goods" that is governed by ORS chapter 72.

■　　Nonetheless, plaintiffs argue that ORS 72.7250 does not bar their negligence *per se* claim.[3] We need not decide if plaintiffs' argument is correct. In their negligence *per se* claim, plaintiffs allege that the "[v]iolation of Oregon Statutory Law is negligence *per se*" but they cite no particular statute. However, during oral argument to the trial court, plaintiffs' counsel referred to ORS chapter 633, apparently in the

---

[3] ORS 72.7250 provides, in part:

"(1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.

"(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered."

context of plaintiffs' negligence *per se* claim. In their brief, plaintiffs quote ORS 633.651(1)(b) and assert that defendants owe plaintiffs a duty under that statute.

We question whether plaintiffs can now rely on ORS 633.651(1)(b) in light of the fact that they did not raise that specific statute to the trial court. Nevertheless, ORS 633.651(1)(b) does not assist plaintiffs. ORS 633.651 provides, in part:

> "(1)   No person shall sell, offer for sale, expose for sale or transport for use in planting in the State of Oregon any agricultural or vegetable seed:
>
> "* * * * *
>
> "(b)   That bears a label that is false or misleading[.]"

Additionally, ORS 633.511 provides, in part:

> "As used in ORS 633.511 to 633.750:
>
> "(1)   'Agricultural seed' means fiber, forage and grass crop seed and any other kind of seed or bulblet commonly recognized in this state as agricultural seed or as lawn or turf seed, and mixtures of any of such seeds, as may be determined by the Director of Agriculture.
>
> "* * * * *
>
> "(17)   'Vegetable seed' means the seed of those crops usually grown in Oregon in gardens or on truck farms or for canning and freezing purposes and generally known and sold under the name of vegetable seed."

Here, plaintiffs purchased grape plants and do not explain why they should be considered to have purchased "seed" as defined by ORS 633.511(1) or (17). Thus, ORS 633.651(1)(b) is not implicated by the facts alleged by plaintiffs, and the trial court could not have erred in dismissing plaintiffs' claim for negligence *per se*.

■     We now turn to plaintiffs' argument that ORS 72.7250 is inapplicable to the claims that they have labeled "negligence" and "negligent misrepresentation." However, because it may be dispositive, we begin by addressing defendants' cross-assignment of error that plaintiffs failed to allege sufficient facts to state claims under ORCP 21 A(8).[4]

---

[1] Defendants cross-assign as error the failure of the trial court to grant its motion on alternative grounds. Plaintiffs contend that defendants'

Specifically defendants argue, as part of their cross-assignment of error, that

> "[t]he predicate duty for a negligence-based, economic loss claim may arise out of some 'special relationship' between the parties, such as the relationship between lawyer and client, princip[al] and agent, or insurer and insured, relati[o]nships in which one party has some obligation to put the economic interests of the other ahead of its own. *Onita [Pacific Corp. v. Trustees of Bronson*, 315 Or 149,] 160-61[, 843 P2d 890 (1992)]; *see also Oregon Life and Health v. Inter-Regional Financial*, 156 Or App 485, 497, 967 P2d 880 (1998). But there was no such relationship here. These plaintiffs and defendants, like all buyers and sellers, were at arm's length. Their relationship was adversarial, each party looking out for its own interest. *See Onita*, 315 Or at 165 (buyers and sellers of land were in adversarial relationship). In such a relationship, negligently-inflicted economic harm is not actionable. *Ibid.*"

Plaintiffs allege generally that defendants "claimed to be the experienced and renowned Nursery the Plaintiffs[ ] needed to help them make the decisions necessary for the planting and care of their vineyard." Plaintiffs also allege that, because they lacked experience in owning and operating a vineyard, they sought a nursery with an "excellent reputation and extensive experience" and entered into a relationship with defendants, "whereby they trusted and relied upon [defendants'] advice and purchased [defendants'] specialty Stock based upon [defendants'] advice." Additionally, plaintiffs allege that they relied upon defendants' guarantees "when deciding to purchase the Stock rather than using the native American varieties of root stock which are resistant to Phylloxera." Plaintiffs make similar allegations in their "negligence" and "negligent misrepresentation" claims. The consistent thread in both claims is that plaintiffs entered into a relationship with defendants in which they relied on defendants' expertise and advice concerning phylloxera and that

---

cross-assignments of error are actually cross-appeals that were not timely filed and that "may not be raised at this time." We disagree. *See* ORAP 5.57(2); *see also Ainslie v. Spolyar*, 144 Or App 134, 926 P2d 822 (1996), *rev dismissed* 328 Or 331 (1999) (holding that a cross-assignment of error is proper when the purpose of the assigned error is to attack a trial court ruling that, if reversed, would support the judgment on a different ground from that relied on by the trial court).

defendants' omissions or conduct pertaining thereto is tortious in nature. It follows, according to plaintiffs, that ORS 72.7250 is inapplicable.

We begin by rejecting defendants' characterization of this case as one involving purely economic losses. In order to conclude that they owed no independent duty to plaintiffs, defendants rely on cases analyzing the duties owed by contracting parties when purely economic losses are at issue. However, in *Onita*, the court said that "the term 'economic losses' * * * describe[s] financial losses such as indebtedness incurred and return of monies paid, as distinguished from damages for injury to person or property." 315 Or at 159 n 6. Here, plaintiffs have alleged that the infected grape plants caused damage to the other plants in their vineyard. Thus, this case involves allegations of property damage.

Nevertheless, the issue of whether plaintiffs allege cognizable claims that are founded in negligence and negligent misrepresentation remains. Although plaintiffs did not respond to the merits of defendants' cross-assignment, their briefs on appeal contain two arguments in support of their position that their remedy is in negligence or negligent misrepresentation, thereby implicating a statute of limitations other than ORS 72.7250: (1) Defendants' "contractual obligation created a common law duty of reasonable care" and (2) a duty was created because of the parties' contractual relationship, which was breached by defendants.[5]

---

[5] In their response to defendants' Rule 21 motions, plaintiffs said

"Defendants' motion must also be dismissed as it applies to Plaintiffs' second claim for relief which alleges common law negligence. Under this claim the defendant must, at least, exercise reasonable care to prevent foreseeable harm. In the Plaintiffs['] complaint * * * there are five particular instances of the defendants['] alleged breach of this duty, including 'failure to properly warn the Plaintiffs[ ] that their Stock was or could be contaminated with Phylloxera.' * * * Whether, in fact, this was a breach of the defendants' common law duty, is an issue for the jury and is not the proper subject of an ORCP 21 motion.

"*While the existence of a duty to 'exercise reasonable care to prevent foreseeable harm' is, by itself enough to dismiss the Defendants' motion, Plaintiffs do not accept this standard as the proper duty owed to them.* Rather, because there was a special relationship between the parties, it is the Plaintiffs' position that the Defendants[ ] owed a heightened duty of care beyond that of common law negligence. This 'special relationship' was created through the existence of the warranty and the trust which the Plaintiffs[ ] placed in the Defendants[ ] when making decisions regarding the planting of their vineyard. Because of the

We first address plaintiffs' argument that defendants' contractual obligation created an independent duty on which to base a tort claim. In *Georgetown Realty v. The Home Ins. Co.*, 313 Or 97, 106, 831 P2d 7 (1992), the Supreme Court stated:

> "The lesson to be drawn from this court's cases discussing the choice between contract and tort remedies is this: When the relationship involved is between contracting parties, and the gravamen of the complaint is that one party caused damage to the other by negligently performing its obligations under the contract, then, and even though the relationship between the parties arises out of the contract, the injured party may bring a claim for negligence if the other party is subject to a standard of care independent of the terms of the contract. If the plaintiff's claim is based solely on a breach of a provision in the contract, which itself spells out the party's obligation, then the remedy normally will be only in contract, with contract measures of damages and contract statutes of limitation. That is so whether the breach of contract was negligent, intentional, or otherwise. In some situations, a party may be able to rely on either a contract theory or a tort theory or both."

We understand plaintiffs' argument to equate defendants' contractual obligation to furnish phylloxera-free plants with an independent duty to exercise reasonable care. However, *Georgetown* does not stand for the proposition that, when a defendant assumes a contractual duty, the defendant automatically becomes subject to a remedy in tort. Instead, *Georgetown* requires the existence of a duty independent of the terms of the contract in order to support a tort claim. Consequently, defendants are not liable in tort merely because they assumed a contractual duty to provide phylloxera-free grape plants.

---

special relationship between the parties, the heightened duty of care is appropriate if Phylloxera contaminated stock is unreasonably dangerous to the Plaintiffs' property. * * *

"* * * * *

"The above arguments also answer Defendants' third motion [concerning the negligence and negligence misrepresentation claims] as well. Defendants owe a duty to honor their warranty under the UCC, and a duty of care under common law negligence. * * * Defendants['] motions, 1-3, should be denied." (Emphasis added.)

To the extent that plaintiffs argue that defendants breached a duty independent of their contract that was based on their relationship with plaintiffs, the court's holding in *Conway v. Pacific University*, 324 Or 231, 924 P2d 818 (1996), is instructive. In that case, the plaintiff and the university were in a contractual employment relationship at the time that the plaintiff claimed that a dean of the university had negligently misrepresented to the plaintiff that adverse student evaluations would not affect his prospects of receiving tenure. The plaintiff argued that the relationship between him and the university gave rise to a duty by the university to exercise reasonable care on his behalf and that that duty had been breached by the dean's misrepresentations. The court rejected the plaintiff's argument. It explained:

> "In analyzing a relationship between contracting parties that may give rise to tort liability, it is important to note the distinction between contractual and tort obligations. Obligations specified by the terms of a contract are 'based on the manifested intention of the parties to a bargaining transaction.' W. Page Keeton, ed., *Prosser and Keeton on the Law of Torts*, § 92, 656 (5th ed 1984). Obligations in tort, or 'duties,' on the other hand, are 'imposed by law—apart from and independent of promises made and therefore *apart from the manifested intention of the parties*—to avoid injury to others.' *Id.* at 655 (emphasis added). In other words, a contract details the specific obligations that each party owes the other and, if one party breaches a term of the contract, that breach will result in contract liability. For tort liability to be imposed, however, a tort duty must exist *'independent of the contract and without reference to the specific terms of the contract.' Georgetown Realty*, 313 Or at 111 (emphasis added) * * *. That duty in tort does not arise from the terms of the contract, but from the *nature of the parties' relationship. Georgetown Realty*, 313 Or at 102 * * * (emphasis added)." *Conway*, 324 Or at 237-38.

Also, the court examined the types of relationships that give rise to a duty independent of a contract and summarized the nature of such relationships as those in which

> "the party who owes the duty has a *special responsibility* toward the other party. This is so because the party who is owed the duty effectively has authorized the party who

owes the duty to exercise independent judgment in the former party's behalf and in the former party's interests. In doing so, the party who is owed the duty is placed in a position of reliance upon the party who owes the duty; that is, because the former has given responsibility and control over the situation at issue to the latter, the former has a right to rely upon the latter to achieve a desired outcome or resolution." *Id.* at 240 (emphasis in original).

Here, plaintiffs allege that defendants were suppliers and plaintiffs were buyers. Although plaintiffs allege that they relied on defendants' representations because of their expertise, plaintiffs do not allege that they employed defendants to exercise independent judgment on their behalf or that they gave control to defendants to achieve a particular outcome. In that sense, they are not unlike the plaintiff in *Conway* who alleged that he relied on the relationship with the university as the basis of his claim that an independent duty existed. The Supreme Court rejected the plaintiff's claim of negligent misrepresentation in *Conway* because the evidence did not demonstrate a duty independent of the contract. We are persuaded that the same reasoning applies here. Plaintiffs do not allege a duty on the part of defendants that is independent of their sales contract. Accordingly, the trial court could not have erred in dismissing plaintiffs' negligence and negligent misrepresentation claims because plaintiffs failed to state claims on those theories.

■    We now turn to plaintiffs' argument that ORS 72.7250 does not bar their products liability claim. In *Redfield v. Mead, Johnson & Co.*, 266 Or 273, 279, 512 P2d 776 (1973), the court said that

> "a plaintiff who is injured more than four years after the sale of the defective product, although barred from recovery for breach of warranty in an action pursuant to the [Uniform Commercial] Code, will nevertheless have two years to bring an action based on strict liability in tort, provided he can show that the defective product was unreasonably dangerous[.]"

Plaintiffs incorporate by reference into their products liability claim the allegation that they did not discover the symptoms of phylloxera in the area where they planted the grape plants purchased from defendants until October 1995, or

within two years of the filing of their complaint. Although *Redfield* was decided before the enactment of ORS 30.900 to ORS 30.927, we see nothing in the language of the applicable statutes that indicates that the legislature intended a different result.

In that light, we consider defendants' cross-assignment of error that presents an alternative ground under ORCP 21 A(8) for dismissing plaintiffs' products liability claim. Specifically, defendants contend that the defect in a product must be "man-endangering" or a threat to personal safety to be the subject of a products liability claim under ORS 30.920.

Plaintiffs allege, in pertinent part:

"59.

"Phylloxera infested stock is unreasonably dangerous to European grape stock, or a vineyard planted with European grape stock, because Phylloxera infested stock will spread to other European grape stock within the vineyard causing their eventual death.

"* * * * *

"61.

"[Defendants'] Phylloxera infested stock was unreasonably dangerous to the Plaintiffs' property, or the property of any ordinary consumer of grape stock, in that it has started, and will cause, the eventual death of all the Plaintiffs' grape vines."

As defendants point out, plaintiffs' complaint does not allege that the grape plants sold by defendants are unreasonably dangerous to human life and safety. The issue is whether, based on the above allegations, plaintiffs complaint states a claim under ORS 30.920.

Before the legislature enacted ORS 30.920, the Supreme Court decided *Brown v. Western Farmers Assoc.*, 268 Or 470, 521 P2d 537 (1974), and *Russell v. Ford Motor Company*, 281 Or 587, 575 P2d 1383 (1978). In *Brown*, the issue was whether "liability under Section 402A of the Restatement of Torts 2d (1965), as previously adopted by [the

Supreme Court], should be extended to economic loss, including loss of profits from inability to use property damaged by a defective product." 268 Or at 472 (footnote omitted). The plaintiffs alleged that the chicken feed that they had purchased and had fed to their laying hens was defective because it caused the eggs to have a bad taste and caused the chickens to quit laying eggs. The court held that the complaint did not "allege facts from which it appears, either directly or by inference, that the chicken feed involved in this case was 'unreasonably dangerous,' rather than merely 'defective' in some manner that would not make it 'unreasonably dangerous.'" *Id.* at 478. The court noted that it had applied the rule in Section 402A to cases involving products with a defect that was unreasonably dangerous to human life and that "[t]he only two decisions * * * in which Section 402A ha[d] been applied to property damage ha[d] been cases in which the defective product also posed an unreasonable danger to human life and safety." *Id.* at 479. However, the court said:

> "We need not decide in this case whether our adoption of the rule of strict liability, as stated in Section 402A, for application in cases involving damage to property from defective products should be limited to cases in which the defective product is unreasonably dangerous to persons, as well as to property[.]" *Id.* at 480.

In *Russell*, the plaintiff obtained a judgment for damages to his truck that he alleged were caused by a defective axle. The issue was "[w]hether the manufacturer's strict liability for a dangerously defective product may be invoked when the only injury caused by the defect is to the product itself." *Russell*, 281 Or at 589.[6] The court noted that the *Brown* court "only acknowledged that perhaps strict liability should require the *danger* to be one endangering human life or safety, a different question from whether tort recovery

---

[6] The court in *Russell* indicated in a footnote that:

"Section 402A of the Restatement of Torts 2d, the source most cited in Oregon cases since *Heaton v. Ford Motor Co.*, [248 Or 467, 435 P2d 806 (1967),] would extend strict liability for product defects unreasonably dangerous to property as well as to persons. *See Brown* * * *. 268 Or at 476-[ ]78. Assuming that unreasonable danger to property suffices to impose strict liability for marketing a defective product, we proceed on the premise that this danger must be to property other than the product itself." 281 Or at 594 n 5.

should be limited to such an *injury*," and that "[t]hat difference determines the decision in the present case." *Id.* at 593-94 (emphasis in original). The court focused on the nature of the risk created by the defect and noted that whether a seller has marketed a defective product "cannot depend on the fortuitous extent of the damage done when the danger created by the defect subsequently comes to pass." *Id.* at 594. The court concluded that

> "[i]f the alleged defect in the truck axle housing existed, it was certainly a man-endangering one. The property for which damages are claimed, the truck, was assertedly wrecked in consequence of precisely the defective condition, and under the circumstances, that made the product dangerous to the user." *Id.* at 595.

In 1979, the legislature enacted ORS 30.920. It provides, in part:

> "(1) One who sells or leases any product in a defective condition unreasonably dangerous to the user or consumer or to the property of the user or consumer is subject to liability for physical harm *or damage to property* caused by that condition * * *
>
> "* * * * *
>
> "(3) It is the intent of the Legislative Assembly that the rule stated in subsections (1) and (2) of this section shall be construed in accordance with the Restatement (Second) of Torts sec. 402A, Comments a to m (1965). * * *." (Emphasis added.)

Comment d to section 402A of the *Restatement (Second) of Torts* (1965) provides:

> "The rule stated in this Section is not limited to the sale of food for human consumption, or other products for intimate bodily use, although it will obviously include them. It extends to any product sold in the condition, or substantially the same condition, in which it is expected to reach the ultimate user or consumer. Thus the rule stated applies to an automobile, a tire, an airplane, a grinding wheel, a water heater, a gas stove, a power tool, a riveting machine, a chair, and an insecticide. *It applies also to products which, if they are defective, may be expected to and do cause only 'physical harm' in the form of damage to the user's land or*

*chattels, as in the case of animal food or a herbicide."*
(Emphasis added.)

Thus, plaintiffs' claim that defendants' product caused physical harm to their vineyard meets the requirements of ORS 30.920.

After ORS 30.920 was enacted, we decided *City of Medford v. Budge-McHugh Supply Co.*, 91 Or App 213, 754 P2d 607, *rev den* 306 Or 661 (1988). In that case, the plaintiff purchased pipe for an underground water system in 1972 and filed its complaint in 1986, which included a strict products liability claim.[7] The plaintiff alleged economic and property damage as a result of the defective pipe and relied on *Russell*. We interpreted *Russell* as holding that the defect in the product must threaten personal safety and held:

> "The defect alleged in the complaint is that the pipe had a high premature failure rate. The damage alleged is that plaintiff will have to replace the pipe, that the failure of the pipe had resulted in a loss of water, that the need to replace the pipe will require extensive street and excavation repairs and that plaintiff will incur the cost of unspecified additional maintenance to the municipal waterworks system. Although plaintiff's complaint alleges the conclusion of a threat to personal safety, it does not state any facts which, if proved, would permit an inference of unreasonable danger to people or *property*. The allegations make plaintiff out as a disappointed user, not an endangered one. The trial court did not err in dismissing the strict liability claim." *Budge-McHugh Supply Co.*, 91 Or App at 221 (emphasis added).

Here, the defect in the grape plants allegedly caused damage to other plants in the vineyard, unlike in *Budge-McHugh Supply Co.* where the plaintiff alleged that the product defect required repairs to the pipe, and there were no facts alleged to support an inference of unreasonable danger to other property. Consequently, the facts in *Budge-McHugh*

---

[7] ORS 30.920 did not apply to actions commenced before October 3, 1979. Or Laws 1979, ch 866, § 8.

*Supply Co.* are inapposite to the facts in this case. We conclude that plaintiffs' allegations suffice to allege an unreasonable danger to other property and that, for that reason, they have alleged a cognizable claim under ORS 30.920.

■     We turn to the issue of whether plaintiffs' products liability claim was filed within the two-year statute of limitations provided by ORS 30.905. That statute provides:

> "(1) Notwithstanding ORS 12.115 or 12.140 and except as provided in subsection (2) of this section and ORS 30.907 and 30.908 (1) to (4), a product liability civil action shall be commenced not later than eight years after the date on which the product was first purchased for use or consumption.
>
> "(2) Except as provided in ORS 30.907 and 30.908 (1) to (4), a product liability civil action shall be commenced not later than two years after the date on which the death, injury or damage complained of occurs."

Relying on *Dortch v. A. H. Robins Co., Inc.*, 59 Or App 310, 650 P2d 1046 (1982), *overruled in part by Border v. Indian Head Industries, Inc.*, 101 Or App 556, 792 P2d 111, *rev den* 310 Or 475 (1990), plaintiffs assert that their products liability action was timely filed because they filed their action no later than eight years after purchasing the grape plants and within two years of discovering that the plants were infected with phylloxera. Defendants counter that the products liability discovery rule announced in *Dortch* was overruled in *Border*. Furthermore, defendants contend that, even if *Border* did not overrule the discovery rule announced in *Dortch*, we should overrule *Dortch*. Specifically, they assert:

> "The statute at issue here, ORS 30.905(2), is outside of ORS chapter 12 and thus beyond the purview of ORS 12.010, the basis for prior discovery rules. And the language of ORS 30.905(2) is plain: the time to bring a product liability action ends two years 'after the date on which the death, injury or damages complained of occurs'—not when it is discovered. That language, which is substantially similar to the language at issue in *Eldridge* [*v. Eastmoreland General Hospital*, 307 Or 500, 769 P2d 755 (1989),] and *Moore* [*v. Mutual of Enumclaw, Ins. Co.*, 317 Or 235, 855 P2d 626 (1993)], 'is not amenable to a discovery rule as a matter of English.' *Moore*, 317 Or at 250. *Dortch* was wrong,

then, to read a discovery rule into ORS 30.905(2), and it should be overruled ala *Newell v. Weston,* 156 Or App 371, 965 P2d 1039 (1998)[, *rev den* 329 Or 318 (1999)] (overruling prior erroneous interpretation of a statute)."[8]

We do not agree with defendants' interpretation of ORS 30.905(2) or that *Dortch,* as modified by *Border,* was incorrectly decided. In *Dortch,* the plaintiff received a Dalkon Shield intrauterine device in May 1971. Between 1972 and 1976, she experienced chronic intrauterine infections. She also suffered from a build-up of scar tissue in a fallopian tube that, in 1977, resulted in an ectopic pregnancy and a tubal ligation. The plaintiff filed her products liability complaint in September 1980, more than eight years after she purchased the product. She alleged that she did not discover the relationship between the product's defect and her injuries until May 1980.

In reaching our conclusion that the plaintiff's claim was barred because the eight-year period under ORS 30.905(1) had run, we reasoned that "[t]he key to the resolution of this case * * * turn[ed] * * * upon our determination of when an injury occurs for the purposes of analyzing statutes of limitations." *Dortch,* 59 Or App at 316. We recognized that the phrase "the date on which the * * * injury * * * complained of occurs" from ORS 30.905(2) has a common and a legal meaning and that, "when used in construing a statute of limitations, * * * '[i]njury' in the legal sense means a physical injury which the plaintiff knows or as a reasonable person should know was caused by the defendant." *Id.* at 319. In sum, we injected a discovery component into ORS 30.905(1).

■      In *Border,* we held that the plaintiff's claim was timely. The plaintiff was injured by an exploding truck brake within the eight-year period provided in ORS 30.905(1). He

---

[8] Defendants also rely on *Shasta View Irrigation Dist. v. Amoco Chemicals,* 329 Or 151, 986 P2d 536 (1999), to support their contention "that the product liability statute of limitations, ORS 30.905(2), is not subject to the 'discovery rule' created by ORS 12.010." In *Shasta,* the court considered whether the exemption in ORS 12.250 from statutes of limitation in ORS chapter 12 applied to irrigation districts and to the statute of ultimate repose in ORS 30.905(1). The court concluded that ORS 12.250 did not exempt the plaintiff irrigation district from the provisions of ORS 30.905(1) based on the language of the applicable statutes. We do not construe the analysis in *Shasta* to have implicitly overruled our holding in *Dortch* that a discovery rule applies to ORS 30.905(2).

brought a products liability action against the brake manufacturer within two years of the date of his injury. However, relying on our language in *Dortch*, the defendant argued that the plaintiff did not suffer a legal injury within the eight-year period in ORS 30.905(1) because his claim could not accrue until he discovered who manufactured the defective brake and that that had not occurred until after the eight-year period had run. We said:

> "[A]lthough the result in *Dortch* * * * was correct, because the eight-year period in ORS 30.905(1) had expired, our reasoning was wrong. We therefore overrule *Dortch* to the extent that it is based on that reasoning, because it would erroneously bar a claim for an injury that occurs within eight years after the date of first purchase by the user or consumer solely on the basis that the defendant's role in causing the injury is not known until after the eight years has passed, *even if* the plaintiff commences the action within two years after the actual injury.

> "The flaw was our failure to give full effect to the fundamental distinction between a statute of ultimate repose and a statute of limitations. ORS 30.905(1) sets an absolute period within which the plaintiff must be injured in order to have a claim at all. That period passes of its own force, and the plaintiff's knowledge or lack of knowledge can have nothing to do with it. The discovery rule *cannot* apply to a statute of ultimate repose, because there can be no extension of an absolute period. * * * ORS 30.905(1) measures time from the first purchase by the user or consumer. It does not use the word 'injury'; when we used 'injury' in our discussion of that subsection in *Baird v. Electro Mart,* [47 Or App 565, 615 P2d 335 (1980),] we meant it in the sense of physical harm. There is no reason to give the concept any special, different meaning in ORS 30.905(1).

> "On the other hand, ORS 30.905(2) is a statute of limitations. It requires a plaintiff to commence an action within a certain time after the injury or be barred. It measures time from the injury, not from the first purchase. By itself, it sets no outer limit on when a plaintiff may bring the action. The purpose of the discovery rule is to relieve a plaintiff from a limitation when it is unreasonable to impose it because the plaintiff could not have known of the claim. We correctly held in *Dortch* * * * that the discovery

rule applies to ORS 30.905(2)." *Border*, 101 Or App at 562-63 (emphasis in original).

Under our holdings in *Dortch* and *Border*, a discovery rule applies to ORS 30.905(2) but does not affect the eight-year repose period in ORS 30.905(1). In this case, plaintiffs allege that they purchased the plants in February 1991. They filed their original complaint in September 1997. Thus, plaintiffs have filed their complaint within eight years of their purchase of the plants in compliance with ORS 30.905(1). Plaintiffs allege that "[a]erial [p]hotographs of [the v]ineyard were taken in early October[ ] 1995, which, combined with tests, confirmed Phylloxera symptoms in the areas where the 1991 Stock was planted" and that, "[i]n November of 1995, Oregon State University, North Willamette Research Center, and another lab, found Phylloxera adults on root samples taken from [the v]ineyard in areas where the 1991 Stock was planted." Thus, based on their discovery of Phylloxera in 1995, plaintiffs have alleged that their complaint was timely filed within the two-year limitations period of ORS 30.905(2), the controlling statute of limitations. Consequently, the trial court erred in dismissing plaintiffs' products liability claim.

■ We turn now to the remaining claims for breach of contract and warranty. As we have said, the sale of the grape plants as alleged in plaintiffs' complaint was a "contract" for the sale of "goods" that is governed by ORS chapter 72. However, plaintiffs argue that their claims for breach of warranty are governed by ORS 30.905 because they should be deemed product related. In support of their argument, plaintiffs rely on *Philpott v. A.H. Robins Co., Inc.*, 710 F2d 1422 (9th Cir 1983), and *Bancorp Leasing & Fin. Corp. v. Agusta Aviation*, 813 F2d 272 (9th Cir 1987).[9] We addressed similar issues in

---

[9] In *Philpott*, the plaintiff filed a claim for personal injury damages resulting from her use of the Dalkon Shield. The plaintiff received the device in August 1971. She was diagnosed with pelvic inflammatory disease in May 1972. She underwent a hysterectomy in April 1973. The plaintiff claimed that she did not know of the connection between her disorders and the Dalkon Shield until January 1981. She filed her complaint in February 1981 and alleged negligence, strict liability, breach of warranty, fraudulent misrepresentation and wanton and wilful misconduct theories of recovery. The defendant asserted that the claims were time barred under ORS 30.905. The Ninth Circuit reasoned that ORS 30.905 applied to all products liability civil actions as defined in ORS 30.900. The court relied on the breadth of the definition in ORS 30.900 and the legislative history. Additionally,

*Marinelli v. Ford Motor Co.*, 72 Or App 268, 696 P2d 1, *rev den* 299 Or 251 (1985). In *Marinelli*, the plaintiff's complaint stated claims for strict liability and negligence. The plaintiff contended that the defendants' "activities in connection with the design, manufacture, sale, testing and inspection of" a truck contributed to the injuries that he suffered while a passenger in the truck when it was involved in an accident. *Id.* at 270. The trial court granted the defendants' motion to dismiss on the ground that the plaintiff's claims were barred under the statute of repose in ORS 30.905(1). In response to the plaintiff's appeal, the defendant argued that "the term 'product liability civil action,' as defined by ORS 30.900, embraces *all* theories a plaintiff can adduce in an action based on a product defect." *Id.* at 273 (emphasis in original). We noted that that argument was supported by the reasoning in *Philpott* and the plain language of ORS 30.900, which provides the definitions for ORS 30.905. We affirmed the trial court's ruling, stating that nothing in the language of ORS 30.900 suggests that ORS 30.905

> "was intended to apply to defects or failures that give rise to strict liability but not to defects or failures that result from negligence. Moreover, although the legislature is free to attach different limitation periods to different allegations that are *highly* likely to be made in the same action, we do not think that it intended to do so here." *Id.* at 273 (emphasis in original).

*See also Sealey v. Hicks*, 95 Or App 182, 186, 768 P2d 468 (1989) (holding that ORS 30.905 applied to the plaintiff's negligence claim for the failure to warn of a defective product "whether the cause of action is characterized as strict liability or negligence"), *aff'd on other grounds* 309 Or 387, *cert den* 498 US 819 (1990).

The reasoning in *Marinelli* is instructive. Because a product defect was the gravamen of the claims in that case,

---

the court noted that the statute for awarding punitive damages in products liability cases was particularly applicable to intentional tort causes of action, which provided additional support for its theory that ORS 30.905 governs all causes of action concerning a product defect. In *Bancorp*, the court relied on *Philpott* to hold that all claims that are product related, including the plaintiff's breach of warranty claim, were governed by the products liability statute of limitations and not the UCC statute of limitations.

we applied the statutory scheme that pertained to defective products. Here, the gravamen of plaintiff's breach of contract and warranty claims is the alleged guarantee arising from the sales contract that the grape plants were free of phylloxera. ORS 72.7140 *et seq*. govern remedies for breach of sales and warranty contracts in regard to accepted goods. There is nothing in the applicable statute of limitations, ORS 72.7250, for those remedies that suggests that the legislature intended to attach a different limitation statute to those claims because they were "product related." In contrast, the gravamen of plaintiff's product liability claim is not the *promise* or *warranty* that the grape plants are free of phylloxera. Liability occurs under ORS 30.900 *et seq*. for a defect in a product regardless of any promise or warranty.[10] We conclude that the applicable statute of limitations for plaintiff's sales and breach of warranty claims is not ORS 30.905.

Plaintiffs' alternative argument is that ORS 12.080(3) is the proper statute of limitations for all of their claims. For purposes of this opinion, we will assume that their argument was preserved, even though defendants contend otherwise. ORS 12.080(3) provides for a six-year statute of limitations for claims for damages to real property. Because plaintiffs' negligence *per se*, negligence and negligent misrepresentation claims fail on other grounds, there is no need to discuss the statute of limitations that governs them. Also, because we conclude that plaintiffs' products liability claim should not have been dismissed, there is no need to discuss plaintiffs' alternative argument in relation to it. That leaves us with plaintiffs' breach of contract and warranty claims and the issue of whether they are controlled by ORS 12.080(3) rather than ORS 72.7250. ORS 12.010 provides:

"Actions shall only be commenced within the periods prescribed in this chapter, after the cause of action shall have accrued, except where a different limitation is prescribed by statute."

---

[10] It is the gravaman or the predominant characteristic of the claim, not the plaintiff's election, that governs the applicable statute of limitations. *Lindemeier v. Walker*, 272 Or 682, 538 P2d 1266 (1975).

Because ORS 12.080(3) is part of ORS chapter 12, ORS 12.010 makes ORS 72.7250 the applicable statute of limitations for claims for breaches of a sales contract and breaches of warranty under ORS chapter 72. Accordingly, the trial court did not err in holding that plaintiffs' breach of contract and warranty claims are controlled by ORS 72.7250.

■ In their second assignment of error, plaintiffs contend that defendants warranted that the plants would be phylloxera free in the future. Their argument assumes that ORS 72.7250 controls their breach of contract and express and implied warranty claims but that the accrual of those claims is postponed because the warranties purportedly extended to the future. Thus, the four-year statute of limitations in ORS 72.7250(1) did not begin to run until the plants matured and could be compared to healthy plants. Plaintiffs rely on ORS 72.7250(2), which provides, in part:

> "A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered."

Plaintiffs' breach of express warranty claim alleges that "[d]efendants' expressly warrantied the 1991 Stock as 'Phylloxera Free' " in order to create reliance and encourage customers to choose their product as opposed to a competing product without a warranty. Plaintiffs' breach of express warranty under the UCC claim alleges that as the basis of the bargain between plaintiffs and defendants: (1) "[d]efendants provided Oregon State Certification, which stated that 'Grape plants grown by Mark Benoit Willamette Valley Vineyard Services have been visually inspected and no grape Phylloxera were found' "; (2) defendants described their stock as "Phylloxera Free"; and (3) "[d]efendants offered a State Certified, 'Phylloxera Free' Sample as an example of the quality of goods which the Plaintiffs were purchasing, creating an express warranty that the whole of the goods purchased would conform to the sample." Additionally, plaintiffs also allege that defendants breached the implied warranties

of fitness for a particular purpose and merchantability based on the operative facts alleged. We perceive nothing in the language of the alleged warranties from which it can be inferred that they explicitly or implicitly extend to future performance.[11] They merely warrant that the plants were not contaminated with phylloxera at the time of the sale. Thus, the exception to ORS 72.7250(1) in ORS 72.7250(2) is inapplicable, and the trial court did not err in dismissing plaintiffs' warranty claims.

In sum, plaintiffs fail to state a negligence *per se* claim under ORS chapter 633 because the statute on which they rely is not implicated by the facts that they allege. Plaintiffs' negligence and negligent misrepresentation claims fail because they do not allege a duty independent of the sales contract between the parties. Plaintiffs allege a sufficient products liability claim, and, based on the pleadings, their claim appears to have been timely filed under ORS 30.905. Plaintiffs' breach of contract and warranty claims fail because they were filed after the statute of limitations in ORS 72.7250 had run.

Reversed and remanded as to products liability claim; otherwise affirmed.

---

[11] As to whether ORS 72.7250(2) applies to implied warranties, see *Sponseller v. Meltebeke*, 280 Or 361, 365 n 2, 570 P2d 974 (1977) ("an *implied* warranty of fitness is *not* one which '*explicitly* extends to *future* performance.' It is neither explicit nor future oriented but merely impliedly warrants the workmanship and fitness for habitation at the time of construction. The cause of action for breach of an implied warranty of fitness accrues at the time of delivery" (emphasis in original)). *See also Housing Authority of Portland v. Ash Nat'l*, 36 Or App 391, 395, 584 P2d 776 (1978) (reasoning that an implied warranty "is a 'curious hybird' between tort and contract law" and differs from express warranties based on contract).