Argued and submitted June 6, reversed and remanded September 27, petition for review denied December 5, 2006 (342 Or 116)

# Edmund HUNTER
## and Regina Hunter,
## dba Whisky Hill Nursery,
### *Appellants,*

*v.*

# WOODBURN FERTILIZER, INC.,
## *Respondent.*

## 04C-14833; A127863

144 P3d 970

Paul R.J. Connolly argued the cause for appellants. With him on the briefs was Connolly & Goldian, LLP.

Bruce R. Gilbert argued the cause for respondent With him on the brief was Smith Freed & Eberhard, PC.

Before Linder, Presiding Judge, and Brewer, Chief Judge,* and Deits, Judge pro tempore.

LINDER, P. J.

---

* Brewer, C. J., *vice* Wollheim, J.

## LINDER, P. J.

Plaintiffs brought this action against defendant, alleging breach of an express warranty that the miticide that defendant sold to plaintiffs could safely be used on their May 2000 rose crop. The trial court granted summary judgment for defendant on the ground that the action had not been commenced within four years of delivery of the miticide, as required by ORS 72.7250.[1] Plaintiffs assign error to that ruling, arguing that the warranty "explicitly extend[ed] to future performance" and that the limitation period therefore did not begin to run until plaintiffs discovered the breach. ORS 72.7250(2). We conclude that there is a triable issue of fact as to whether the warranty explicitly extended to future performance; we therefore reverse and remand.

■ In reviewing a grant of summary judgment, we view the facts in the light most favorable to the nonmoving party—in this case, plaintiffs. ORCP 47 C; *Jones v. General Motors Corp.*, 325 Or 404, 408, 939 P2d 608 (1997). Plaintiffs are Edward and Regina Hunter, the owners of Whisky Hill Nursery. According to an affidavit by plaintiff Edward Hunter, a sales representative of defendant came to the nursery in August 1999 and told him about the miticide "Joust." According to Hunter, defendant's sales representative knew that the nursery would not need a miticide for its roses until May 2000, when the first danger of mite infestation would arise. Also according to Hunter, the sales representative told him "that Joust would be effective in killing mites and would be safe on the young roses that we would grow in the spring of 2000."

---

[1] ORS 72.7250 provides, in part:

"(1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.

"(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered."

Plaintiffs purchased the Joust in August 1999. Hunter expected that, as part of the bargain, the sales representative would continue to advise plaintiffs on specific permissible uses for the Joust, as he had customarily done with other products that plaintiffs had purchased. In May 2000, the sales representative again visited the nursery and advised plaintiffs to use the Joust on their young roses. Plaintiffs did so and, according to their complaint, lost their entire rose crop because the Joust was not safe to use on the young roses. In December 2003, plaintiffs filed for bankruptcy. Plaintiffs brought this action for breach of warranty in May 2004.

Defendant moved for summary judgment on the ground that the action had been commenced more than four years after the Joust had been delivered and that the action was therefore untimely under ORS 72.7250, which requires that a cause of action for breach of any contract for sale must usually be brought within four years of tender of delivery. Plaintiffs responded that (1) the limitation period was tolled by the bankruptcy proceedings that commenced in December 2003 and (2) the limitation period had not begun to run until May 2000 because defendant had created an express warranty that explicitly extended to future performance of the goods. *See* ORS 72.7250(2) ("[W]here a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered."). Defendant agreed that the bankruptcy proceeding tolled the limitation period. Defendant asserted, however, that the action was nevertheless untimely because none of its representations amounted to an express warranty of future performance. Therefore, according to defendant, the limitation period had expired in August 2003, before the bankruptcy proceedings commenced. The trial court agreed and granted summary judgment for defendant. Plaintiffs appeal.

On appeal, the parties' dispute centers on whether the alleged statement by defendant's sales representative "that Joust would be effective in killing mites and would be safe on the young roses that [plaintiffs] would grow in the spring of 2000" constitutes a "warranty explicitly extend[ing]

to future performance of the goods," within the meaning of ORS 72.7250(2).[2] Plaintiffs assert that it does because it explicitly states that the goods will perform at a specified time in the future. Defendant argues that it does not because the statement was not sufficiently explicit regarding the future performance. In defendant's view, the only warranties that qualify as a warranty of future performance under ORS 72.7250(2) are those in which the seller represents that a good will remain durable over a specified period of time—for example, a full five-year warranty. We disagree.

■■ ORS 72.7250(1) provides that the statute of limitations for a breach of warranty begins to run at the time of the breach. Subsection (2) specifies that "[a] breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." Because the statute requires explicitness, only an express warranty may qualify as a warranty of future performance. *Sponseller v. Meltebeke,* 280 Or 361, 365 n 2, 570 P2d 974 (1977) (noting that an implied warranty of fitness for a particular purpose cannot qualify as a warranty of future performance because it "is neither explicit nor future oriented"); *Permapost Products Co. v. Osmose, Inc.,* 200 Or App 699, 707, 116 P3d 909 (2005) (same). A contract need not use the term "warranty," however, to create a warranty of future performance. Rather, the definition of

---

[2] The parties also dispute whether the fact that defendant's sales representative advised plaintiffs in May 2000 to use the Joust on their young roses created an express warranty of future performance separate and distinct from the warranty that was allegedly created in August 1999. We do not address the merits of that issue because, although plaintiffs initially raised that argument before the trial court, they later abandoned that argument and relied on the May 2000 statements only as evidence that an earlier warranty had been created, not as evidence of a separate warranty. Plaintiffs therefore did not preserve an argument that a separate warranty arose from the May 2000 statements. *See State v. Chavez,* 335 Or 44, 48, 56 P3d 923 (2002) (argument abandoned under similar circumstances not preserved for appeal).

Although we do not consider plaintiffs' argument that the May 2000 statements, by themselves, created an express warranty, we agree with plaintiffs, as we will explain below, that the continued advice of defendant's sales representative is relevant evidence that bears on whether defendant, in August 1999, created an express warranty of future performance that became part of the basis of the bargain.

express warranty broadly includes any description of the goods, affirmation of fact, or promise that becomes part of the basis of the bargain. *See* ORS 72.3130 (defining express warranty and stating that it "is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant' or 'guarantee' or that the seller have a specific intention to make a warranty").

■     In addition to being an express warranty, a warranty of future performance must "explicitly extend[ ] to future performance" and "discovery of the breach must await the time of such performance." ORS 72.7250(2). Both requirements are essential; the mere fact that a breach of the warranty would be impossible to discover at the time of delivery is not itself sufficient to create a warranty of future performance. *Gladhart v. Oregon Vineyard Supply Co.*, 164 Or App 438, 994 P2d 134 (1999), *rev'd in part on other grounds*, 332 Or 226, 26 P3d 817 (2001). For example, in *Gladhart,* the plaintiffs purchased grapevines that the sellers described as "Phylloxera Free." *Id.* at 460. We held that that statement did not constitute a warranty of future performance because, although discovery of the defect would necessarily require waiting for the vines to develop, there was nothing in the language of the warranty from which we could infer that it extended to future performance. Instead, the language merely warranted that the plants were not contaminated with phylloxera at the time of the sale. *Id.* at 461.

Similarly, in *Permapost Products Co.*, we held that an express warranty made by the seller of a wood preservative to a buyer who used it to treat wood for homes that the product "was free from defect and could be used in plaintiff's wood products safely" was not a warranty of future performance. 200 Or App at 707. Citing *Gladhart*, we rejected an argument that the warranty necessarily extended to future performance where discovery of the breach would require not only delivery, but also the treatment of the wood, its installation into a residential structure, resident exposure, and finally, resident illness and awareness of actual property damage. *Id.* at 706. Although the breach could not be discovered at the time of delivery, as with the "Phylloxera Free" warranty in *Gladhart,* the language in the warranty did not mention a future time and therefore it did not "explicitly"

extend to future performance within the meaning of the statute. *Id.* at 707.

■      In contrast, where an express warranty guarantees the future performance of a product, it is properly characterized as a warranty that explicitly extends to future performance. The most common example is a warranty that guarantees performance over a period of time—for example, an express guarantee that a burial vault will give "satisfactory service at all times." *Mittasch v. Seal Lock Burial Vault, Inc.*, 344 NYS 2d 101, 42 AD 2d 573 (NY App Div 1973); *see also* James J. White and Robert S. Summers, *Uniform Commercial Code* § 11-9, 608-09 (4th ed 1995) ("[P]resumably a [future performance warranty] case would be one in which the seller gave a 'lifetime guarantee' or one in which seller, for example, expressly warranted that an automobile would last for 24,000 miles or four years whichever occurred first.").

■      In addition to warranties that guarantee the performance or durability of a product over a period of time, warranties of future performance also include promises that a product will perform on a particular date in the future. *See* Ronald A. Anderson, 4B *Anderson on the Uniform Commercial Code* § 2-725:121, 320 (3d ed 2001) ("When the parties agree that a performance shall not be due until a future date, the statute of limitations does not begin to run until that date."); *see also* White and Summers, *Uniform Commercial Code* at 610 (explaining that a lifetime warranty is properly characterized as a warranty of future performance because it promises performance "not merely at the moment of purchase but *at some future date* as well" (emphasis added)).

For example, in *Glen Peck, Ltd. v. Fritsche*, 651 P2d 414, 415 (Colo Ct App 1981), the court held that a promise that certain bulls would breed at a specific time in the future constituted a warranty of future performance. There, the plaintiffs brought an action for breach of an express warranty that the bulls they purchased were breeders. Specifically, the contract of sale provided,

> "BREEDING GUARANTEE: BULLS—Should any bull Fourteen (14) months of age or over, fail to prove a breeder after being used on cows known to be breeders, the matter

shall be reported in writing to the seller within six (6) months following date of purchase or six (6) months after the bull has reached 14 months of age."

*Id.* The court held that that warranty constituted one that explicitly extended to future performance, reasoning that it was explicit and that it "promised the performance of the bulls as breeders, not only at the moment of purchase but at some future date as well, namely, 'after being used on cows known to be breeders.'" *Id.* Thus, the statute of limitations did not begin to run until the plaintiffs discovered the breach.

Similarly, in *Salt Lake City Corp. v. Kasler Corp.*, 855 F Supp 1560, 1568 (D Utah 1994), the court likewise held that a promise of performance at a specific point in the future constituted a warranty of future performance. In that case, the defendant supplied goods to the plaintiff, a general contractor who was working on a project for Salt Lake City. The defendant promised the plaintiff that the goods would perform and, if they did not, that the defendant would repair or replace them up until the time when the plaintiff was released from liability by the city. The court held that the promise that the goods would perform, coupled with the explicit reference to the future time when the plaintiff would be released from liability, created a warranty that explicitly extended to future performance. *Id.*

■　　In sum, to create a warranty of future performance, a seller must make an express warranty—that is, any affirmation of fact, promise, or description of the goods that becomes part of the basis of the bargain—that explicitly extends to future performance. In addition, discovery of the breach must await the future performance.

■　　In this case, plaintiffs assert that defendant's sales representative stated "that Joust would be effective in killing mites and would be safe on the young roses that [plaintiffs] would grow in the spring of 2000." The statement constitutes an affirmation of fact that the Joust would, in fact, be safe to use in May 2000 on plaintiffs' young roses. The statement is also one that explicitly extends to future performance. Unlike the statements at issue in *Gladhart* and *Permapost Products Co.*, the statement in this case guaranteed the product's performance at a specific time in the future—that is, May 2000.

Defendant asserts that that alone is insufficient because an express warranty of future performance must guarantee performance over a *period* of time. Defendant, however, has cited no authority stating that a warranty of future performance is limited to one involving durability over a period of time, and there are at least two cases, *Glen Peck, Ltd.* and *Salt Lake City Corp.*, to the contrary. We therefore conclude that the statement explicitly extended to future performance.

■    It is less clear, however, whether the future-oriented part of the statement became part of the basis of the bargain so as to create an express warranty pertaining to a future time. *See* ORS 72.3130 (affirmation of fact must become part of "the basis of the bargain" to create an express warranty). It may be, for example, that the parties were concerned only with whether the Joust was safe to use on young roses, and the mention of May 2000 was merely happenstance and did not become part of the basis of the bargain. However, it also may be that the future date was of at least some importance to the parties. Hunter stated in his affidavit that he expected, as part of the bargain, that defendant's sales representative would continue to advise plaintiffs on Joust's specific permissible uses. It may be that, by eliciting a promise that the Joust would perform in May 2000, plaintiffs were ensuring that the sales representative would return the following spring to consult on its application. The fact that the sales representative customarily advised plaintiffs on permissible uses of the products that they purchased, and the further fact that the representative continued to advise plaintiffs on permissible uses of the Joust through May 2000, constitutes evidence that the future-performance aspect of the warranty was part of the basis of the bargain. The issue is one of fact for the jury. *See* UCC § 2-313 comment 3 ("[N]o particular reliance on [affirmations of fact] need be shown in order to weave them into the fabric of the agreement. Rather, any fact which is to take such affirmations, once made, out of the agreement requires clear affirmative proof. The issue normally is one of fact.").[3]

---

[3] Although the official comments to the UCC lack the force of law, they are instructive because the legislature took note of them at the time of adoption, they are consistent with the structure of the UCC, and the purpose of the official

We turn to whether discovery of the breach required awaiting future performance. In this case, there is no dispute that plaintiffs could not grow a young rose crop to test the Joust on until the spring following their purchase of the Joust. Thus, discovery that the Joust was not safe to use on the young roses, as allegedly warranted, had to await the future time for performance.

■    In sum, there is a triable issue of fact as to whether defendant's sales representative created an express warranty that explicitly extended to future performance and thereby extended the limitation period under ORS 72.7250(2). It follows that summary judgment was inappropriate.

Reversed and remanded.

---

comments is to promote uniform construction of the UCC. *U.S. National Bank v. Boge*, 311 Or 550, 563, 814 P2d 1082 (1991).