Monte CARPENTER, Mary Carpenter, Rodney Carpenter, Teresa Carpenter, Plaintiffs,

v.

LAND O' LAKES, INC., a Minnesota corporation, Cenex AG, Inc., a Minnesota corporation, Cenex, Inc., a Minnesota corporation, Cenex/Land O' Lakes Agronomy Co., a Minnesota corporation, Defendants.

Civ. No. 94–1566–FR.

United States District Court, D. Oregon.

March 17, 1995.

---

David F. Sugerman, Paul & Sugerman, P.C., Portland, OR, Dennis Messoline, Salem, OR, for plaintiffs.

William Davis, Paul R. Xochihua, Lin Harmon–Walker, Hallmark, Keating & Abbott, P.C., Portland, OR, for defendants.

## OPINION

FRYE, Judge:

The matters before the court are the defendants' motions against the complaint (# 11). The defendants, Land O' Lakes, Inc., Cenex AG, Inc., Cenex, Inc., and Cenex/Land O' Lakes Agronomy Co., have filed their motions under Rule 12(b) and Rule 12(f) of the Federal Rules of Civil Procedure.

## BACKGROUND

The plaintiffs, Monte Carpenter, Mary Carpenter, Rodney Carpenter and Teresa Carpenter, filed their complaint in the Circuit Court of the State of Oregon for the County of Marion against Land O' Lakes, Inc. (Land O' Lakes) and its agent, Nick Stagg, alleging claims for breach of contract, negligence, product liability, breach of warranty, fraud, and the reckless infliction of emotional distress. Under Rule 21 of the Oregon Rules of Civil Procedure, Land O' Lakes and Stagg moved to dismiss the claim of the Carpenters under O.R.S. 30.920 for product liability and their claims for non-economic and punitive damages in their second amended complaint. The Marion County Circuit Court granted the defendants' motion and dismissed the Carpenters' claim under O.R.S. 30.920 for product liability and their claims for non-economic and punitive damages without opinion. The Carpenters then voluntarily dismissed their action in the Marion County Circuit Court and filed their complaint in this court against Land O' Lakes, Cenex AG, Inc., Cenex, Inc., and Cenex/Land O' Lakes Agronomy Co.

The defendants contend that the pretrial rulings made by the Marion County Circuit Court are the law of the case and must be followed by this court. The defendants argue that the rulings of the Marion County Circuit Court were made on the basis of the substantive laws of the State of Oregon and, because this court is sitting in diversity, the doctrine of the law of the case requires this court to uphold the rulings of the state court. Accordingly, the defendants move the court to dismiss the claim of the Carpenters under O.R.S. 30.920 for product liability, their prayer for punitive damages, and all claims for non-economic damages because those claims were dismissed without leave to replead by the Marion County Circuit Court. In the alternative, the defendants move the court to dismiss the claims of the Carpenters on substantive grounds.

The Carpenters contend that the doctrine of the law of the case does not require the

court to dismiss the claims that were dismissed by the Marion County Circuit Court. The Carpenters argue that this court should not adopt the rulings of the Marion County Circuit Court on the motions of Land O' Lakes and Stagg which were filed under Rule 21 of the Oregon Rules of Civil Procedure because the laws of the State of Oregon require fact-based pleadings, and this court must apply the federal law which requires only notice-based pleadings. The Carpenters also argue that the rulings made in the Marion County Circuit Court were clearly erroneous.

## APPLICABLE LAW

■ The law of the case doctrine provides that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case. Unlike the doctrine of stare decisis, however, law of the case is a discretionary doctrine.... The law of the case will not be enforced where it is clearly erroneous or where doing so would produce an injustice.

*Redfield v. Continental Casualty Corp.*, 818 F.2d 596, 605 (7th Cir.1987) (citations omitted). The law of the case most commonly applies when a case is remanded after an appeal. *Id.* However, the law of the case may apply when a federal district court reviews matters previously decided in state court involving the same parties. *Gage v. General Motors Corp.*, 796 F.2d 345 (10th Cir.1986). A federal court is not bound by any rule of state practice that conflicts with one of the Federal Rules of Civil Procedure. *Redfield, supra.*

## ANALYSIS AND RULING

■ While the defendants argue that the rulings of the state court judge constitute the law of the case and must be upheld in this court, the orders of dismissal entered in the state court do not contain the judge's rationale for dismissing portions of the Carpenters' second amended complaint. This court will make an independent assessment pursuant to Rules 12(b) and 12(f) of the Federal Rules of Civil Procedure in order to determine whether the complaint filed in this court is sufficient under federal law. *Redfield, supra*, 818 F.2d at 605. Accordingly, the court will address the motions of the defendants against the complaint under Rules 12(b) and 12(f) of the Federal Rules of Civil Procedure.

## APPLICABLE STANDARD

■ A motion to dismiss under Rule 12(b)(6) will only be granted if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Gibson v. United States*, 781 F.2d 1334, 1337 (9th Cir.1986), *cert. denied*, 479 U.S. 1054, 107 S.Ct. 928, 93 L.Ed.2d 979 (1987). The review is limited to the complaint, and all allegations of material fact are taken as true and viewed in the light most favorable to the non-moving party. *Cassettari v. Nevada County, Cal.*, 824 F.2d 735, 737 (9th Cir.1987).

## ALLEGATIONS OF THE COMPLAINT

The Carpenters are partners who own and operate a dairy farm located in the County of Marion in the State of Oregon. The defendants are Minnesota corporations licensed to do business in the State of Oregon. The defendants manufacture, market and sell feed products for dairy cattle. On or about October 23, 1991, defendant Land O' Lakes contracted to sell to the Carpenters dairy feed manufactured by the defendants. The defendants provided nutritional information and support and consulting services to the Carpenters in connection with the sale of the feed. The defendants knew that the feed was to be used for the Carpenters' dairy cattle, and the Carpenters relied upon the expertise of the defendants in the handling of the feed.

On or about May 28, 1993, the defendants delivered to the Carpenters feed that was contaminated by mold, insect parts, insect feces, and poisonous pathogens. The Carpenters fed the contaminated feed to their dairy cattle. The contaminated feed was poisonous to the dairy cattle, causing them sickness, intoxication and, in some instances, death. As a result of the contaminated feed, milk production decreased, and there were multiple spontaneous abortions and a loss of

fecundity. Several of the herd suffered toxic reactions, causing them to fall and to injure other cattle as well as humans.

As a result of the ingestion of the contaminated feed, the Carpenters have suffered economic damages as follows: (1) 112 cows have died of poisoning; (2) 93 cows have had spontaneous abortions; (3) 309 cows no longer produce milk; (4) 310 cows have foot problems, have suffered falls due to intoxication, and have breeding problems; and (5) 270 mature cows, 39 heifers, and one bull have been poisoned. As a result, the Carpenters have suffered economic damages in the amount of $464,000. The Carpenters seek the veterinarian costs incurred, reimbursement for property damage caused by the sick and dying cows, loss of future income from milk production and breeding, and the loss of goodwill and reputation.

The first claim for relief consists of two counts. In Count I, the Carpenters allege a claim for breach of the implied warranty of fitness for a particular purpose. In Count II, the Carpenters allege a claim for breach of the implied warranty of merchantability. In their second claim for relief, the Carpenters allege that the feed was in a dangerously defective condition that foreseeably caused the Carpenters' economic and non-economic damages, as well as personal injuries sustained by Monte Carpenter and Rod Carpenter. Allegedly, Monte and Rod Carpenter were injured when certain cows fell on them as a result of their toxic reaction to the contaminated feed. The Carpenters also allege that the conduct of the defendants amounted to the wanton disregard of the health, safety and welfare of others. The Carpenters seek punitive damages in the amount of $10,000,000.

In Count I of their third claim for relief, the Carpenters allege that the defendants were negligent per se in distributing adulterated commercial feed in violation of O.R.S. 633.045. In Count II of their third claim for relief, the Carpenters allege that the defendants were negligent in failing to manufacture the feed to the specifications required for the manufacture of safe feed, in failing to properly inspect the feed before delivering it, in failing to properly inspect the ingredients in the feed, and in failing to properly test the feed for contaminants.

In their final claim for relief, the Carpenters allege that the defendants are liable for fraudulent misrepresentations; they allege that the defendants conducted themselves with wanton disregard for the rights of the Carpenters and others; and they seek punitive damages.

## ANALYSIS AND RULING

1. *Motion to Strike Paragraph 12 of the Complaint*

The defendants move the court to strike paragraph 12 of the complaint in which the Carpenters seek damages for loss of goodwill and business reputation. Relying on the decision in *Caplener v. United States Nat'l Bank*, 317 Or. 506, 857 P.2d 830 (1993), the defendants argue that the claim of the Carpenters for loss of goodwill and business reputation to the partnership that operates the dairy farm must be brought in the name of the partnership, and not by the Carpenters themselves.

In their complaint, each of the Carpenters seek non-economic damages in the amount of $1,000,000 for the loss of goodwill and business reputation as a result of the defendant's conduct. Complaint, ¶ 12. In *Caplener*, the Oregon Supreme Court explained that "the key issue is not whether the claim is by a corporation, a shareholder, or a partner, but whether the claimed damages were derivative of, rather than distinct from, a breach of the agreement with the borrowing corporation or partnership." 317 Or. at 515, 857 P.2d 830. Here, the non-economic damages alleged by the Carpenters derive from the defendants' alleged breach of the agreement with the partnership. Accordingly, the motion of the defendants to strike the claims of the Carpenters for the loss of goodwill and business reputation is granted. Paragraph 12 of the complaint will be stricken.

2. *Motion to Dismiss the Claim for Product Liability for Failure to State a Claim*

The defendants move the court to dismiss the claim of the Carpenters under O.R.S.

30.920 for failure to state a claim for relief. The defendants contend that the claim of the Carpenters under O.R.S. 30.920 is insufficient because the allegedly defective feed caused only commercial loss and, therefore, it was not "unreasonably dangerous" within the meaning of O.R.S. 30.920(1).

■ O.R.S. 30.920(1) provides, in part, that "[o]ne who sells or leases any product in a defective condition unreasonably dangerous ... to the property of the user or consumer is subject to liability for physical harm or damage to property caused by that condition...." The statute contemplates liability for a product unreasonably dangerous to the property of a consumer. In *Agristor Credit Corp. v. Schmidlin*, 601 F.Supp. 1307 (D.Or. 1985), a case involving facts very similar to those alleged here, the plaintiffs alleged a claim under O.R.S. 30.920 on the basis of an allegedly defective feeding system for their cattle which resulted in a decrease in milk production and the deaths and sickness of many of the cattle. The defendants had moved the court to dismiss the product liability claim for failure to state a claim because the plaintiffs had not alleged that the allegedly defective product posed an unreasonable danger to persons. In concluding that the complaint was sufficient to state a claim for relief under O.R.S. 30.920, Judge Redden explained that:

> A defect is not "unreasonably dangerous" merely because it may in some way decrease the value of property. The defect alleged here, however, clearly involves a danger to property other than the product itself. The Oregon Supreme Court has not specifically ruled that a defect unreasonably dangerous to property but not to persons is a sufficient basis for strict liability, but I conclude that it would so rule if confronted with the issue.

*Id.* at 1316 (citation omitted). The defendants argue that this court should not apply the holding in *Agristor* because of the subsequent holding in *City of Medford v. Budge–McHugh Supply Co.*, 91 Or.App. 213, 754 P.2d 607 (1988), in which the Oregon Court of Appeals held that the plaintiff had failed to state a claim for relief under O.R.S. 30.920 because:

> The damage alleged is that plaintiff will have to replace the pipe, that the failure of the pipe had resulted in a loss of water, that the need to replace the pipe will require extensive street and excavation repairs and that plaintiff will incur the cost of unspecified additional maintenance to the municipal waterworks system. Although plaintiff's complaint alleges the conclusion of a threat to personal safety, it does not state any facts which, if proved, would permit an inference of *unreasonable danger to people or property*. The allegations make plaintiff out as a disappointed user, not an endangered one.

91 Or.App. at 221, 754 P.2d 607 (emphasis added). The holding in *City of Medford* is consistent with the holding in *Agristor*. In order to state a claim for relief under O.R.S. 30.920, a plaintiff must allege facts sufficient to permit an inference that the defective product was unreasonably dangerous to persons or to the property of consumers. Allegations of commercial loss caused by the product's failure or allegations of damage to the product itself are insufficient to state a claim for relief under O.R.S. 30.920.

■ The Carpenters have alleged in their complaint that the feed supplied by Land O' Lakes was defective because it was contaminated, and that the contaminants in the feed caused serious injury to their dairy cattle. Those allegations are sufficient to permit an inference that the allegedly defective feed was unreasonably dangerous to the cattle and are sufficient to state a claim for relief under O.R.S. 30.920. The motion of the defendants to dismiss the claim of product liability is denied.

3. *Motion to Strike the Prayer for Punitive Damages in the Product Liability Claim*

■ The defendants move the court under Rule 12(f) of the Federal Rules of Civil Procedure to strike the claim of the Carpenters for punitive damages in paragraph 22 of the complaint. The defendants contend that the facts alleged in the complaint are insufficient to support an award of punitive damages under O.R.S. 30.925. O.R.S. 30.925(1) provides: "In a product liability civil action, punitive damages shall not be recoverable

unless it is proven by clear and convincing evidence that the party against whom punitive damages is sought has shown wanton disregard for the health, safety and welfare of others." The state court dismissed the claim of the Carpenters for punitive damages because it had dismissed the product liability claim. This court has determined that the Carpenters have alleged sufficient facts to state a product liability claim. The Carpenters have also alleged that "defendants concealed from plaintiffs and other purchasers of dairy feed their knowledge of the defects in their feed." Complaint, ¶ 22. Those allegations are sufficient to state a claim for punitive damages under O.R.S. 30.925. The motion of the defendants to strike the prayer of the Carpenters for punitive damages in the claim for product liability is denied.

### 4. Motion to Dismiss Count I (Negligence Per Se)

The defendants move to dismiss Count I of the negligence claim of the Carpenters on the grounds that negligence per se is not a claim for relief, but a standard of care, and that O.R.S. 633.045 does not provide a private cause of action and does not set the legal standard of care in this case. The Carpenters argue that a violation of O.R.S. 633.045 raises a presumption of negligence and provides the standard of care to be applied by the finder of fact in this case.

Both parties apparently agree that O.R.S. 633.045 does not create a private right of action. The issue before this court is whether O.R.S. 633.045 sets the legal standard of care such that there is no question of due care left for determination by the finder of fact. *Gattman v. Favro*, 306 Or. 11, 15 n. 3, 757 P.2d 402 (1988); *Praegitzer Indus. v. Rollins Burdick Hunter of Or., Inc.*, 129 Or.App. 628, 632, 880 P.2d 479 (1994).

O.R.S. 633.045 provides, in part: "No person shall distribute an adulterated commercial feed. A commercial feed shall be deemed to be adulterated: (1) If any poisonous, deleterious or nonnutritive ingredient is therein present in sufficient amount to render it injurious to health when fed in accordance with directions for use shown on the label." Although O.R.S. 633.045 does not provide a private remedy for a violation of the statute, it does state a standard for determining when a feed is adulterated. Accordingly, when a feed is adulterated, a rebuttable presumption of negligence arises which the supplier of the feed may overcome by showing that it acted reasonably under the particular circumstances. Here, the Carpenters have alleged that Land O' Lakes was negligent in delivering feed containing poisonous, deleterious or non-nutritive ingredients in sufficient amounts to render the feed injurious to the health of cattle when fed in accordance with instructions. Those allegations are sufficient to state a violation of O.R.S. 633.045. The motion of the defendants to dismiss Count I of the negligence claim is denied.

### 5. Motion to Strike the Prayer for Non-Economic Damages

Defendants move the court to strike the allegations of non-economic damages in paragraphs 20 and 21 of the complaint (and the reallegations in Count 2 of the negligence claim). Paragraphs 20 and 21 provide as follows:

#### 20.

The toxic reaction caused intoxication of the herd, and as a result injured cows fell upon and injured Monte Carpenter. Plaintiff Monte Carpenter suffered chipped teeth, a loss of fillings and contusions. As a result of the poisoning of his cattle and of his injuries, plaintiff Monte Carpenter suffered emotional distress, pain, extreme fright, anxiety and worry, all to his non-economic damage in the amount of $600,-000.

#### 21.

The toxic reaction caused intoxication of the herd, and as a result injured cows fell upon and injured Rod Carpenter. As a result of the poisoning of his cattle and of his injuries, plaintiff Rod Carpenter suffered emotional distress, pain, extreme fright, anxiety and worry, all to his non-economic damage in the amount of $600,-000.

Complaint, p. 7. The defendants argue that no reasonable trier of fact could find that it was a foreseeable risk of selling defective feed that a farmer might be injured by a falling cow. The Carpenters argue that this court should wait until the parties have developed a record in the case before deciding this issue. The court will wait until the parties have developed a record in this case before ruling. The motion of the defendants to strike the prayer for non-economic damages is denied with leave to renew.

6. *Motion to Strike Claim for Fraud*

The defendants move the court to strike the claim of the Carpenters of fraud on the ground that the allegations in the complaint establish that the claim for fraud is based on representations which are insufficient to constitute actionable fraud under Rule 9(b) of the Federal Rules of Civil Procedure. The defendants argue that the allegations of the Carpenters of fraud are deficient for three reasons: (1) they have not pled representations specifically with respect to time, and the representations alleged are not connected in any meaningful way with the defendants' alleged actions; (2) it is unclear which defendant is alleged to have made each representation; and (3) the representations themselves are non-actionable sales talk, opinions of value, or puffery.

In an action for fraud, a plaintiff must allege a:

(1) material representation; (2) that is false; (3) the speaker's knowledge of its falsity or inexcusable ignorance of its truth; (4) intent that the representation be acted on by the person and in the manner reasonably contemplated; (5) the hearer's ignorance of its falsity; (6) the hearer's right to rely thereon; and (7) damage.

*Banks v. Martin*, 78 Or.App. 550, 554–55, 717 P.2d 1192 (1986).

In their complaint, the Carpenters have alleged that the defendants made, *inter alia*, the following representations in order to induce them to buy the feed:

1) That defendants market only quality feed;

2) That defendants would provide plaintiffs with a wide range of products, programs and services in nutrition to help plaintiffs achieve greater production;

3) That defendants would help plaintiffs establish a more sustainable dairy operation;

4) That defendants would provide plaintiffs access to highly trained on-farm specialists;

5) That defendants would provide plaintiffs with expert advice on nutritional issues;

6) That defendants always strive to make the best feed better; and

7) That defendants would assist plaintiffs in being more competitive and sustainable in their dairy operation.

. . . .

1) That defendants have the best feeds for the best results.

2) That defendants' feed costs were the lowest per hundred pounds of milk; and

3) That defendants would do their best to give plaintiffs a total dairy nutrition package for their dairy herd.

28.

The statements were false in that defendants purchased substandard ingredients to produce substandard and contaminated feeds that did not meet market specifications. Defendants' statements were made with knowledge that they were false or with reckless disregard for the truth of the statements.

29.

Defendants intended that plaintiffs rely on the false statements, and plaintiffs relied on the false statements in purchasing and using defendants' tainted feed.

Complaint, pp. 9–10. The Carpenters also allege damages as a result of the fraudulent misrepresentations.

The defendants argue that the Carpenters have failed to state a claim for fraud because they have not alleged that Land O' Lakes entered into the contract for the sale of the feed with the intent not to perform its promises under the contract. Although such an allegation would support an

action for fraud in the performance of a contract, it is not a necessary allegation for a claim of common law fraud. Accepting the truth of the allegations in the complaint, which the court must do at this stage in the proceedings, the court concludes that the allegations of fraudulent misrepresentations are sufficient to state a claim for common law fraud. *Banks v. Martin, supra.*

The defendants also argue that the alleged misrepresentations are statements of opinion, sales talk, or puffery which are not actionable under a claim for fraud. The court concludes that the alleged misrepresentations do not, as a matter of law, constitute statements of opinion, sales talk, or mere puffery. The misrepresentations alleged concern the quality and condition of the feed to be supplied by the defendants. Accordingly, the question of whether the representations made were fraudulent misrepresentations is for the trier of fact. *See Sellers v. Looper,* 264 Or. 13, 19, 503 P.2d 692 (1972). The motion of the defendants to strike the claim for fraud is denied.

### 7. *Motion to Make the Fraud Claim More Definite and Certain*

Defendants also argue that the Carpenters have failed to allege their claim for fraud with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure because they have not alleged which defendants made which statements. This motion is denied with leave to renew after discovery has been completed.

### 8. *Motion to Strike the Prayer for Punitive Damages in the Claim for Fraud*

The defendants move the court to strike paragraph 31 of the complaint—the Carpenters' prayer for punitive damages. The defendants argue that the doctrine of the law of the case requires this court to adopt the ruling of the state court judge who dismissed the Carpenters' claim for fraud and their prayer for punitive damages. As explained earlier in this opinion, the doctrine of the law of the case does not apply. The motion of the defendants to strike the Carpenters' prayer for punitive damages in the claim for fraud is denied. A motion to strike the

prayer for punitive damages may be made at the conclusion of the Carpenters' case-in-chief.

### CONCLUSION

The defendants' motions against the complaint (# 11) are granted in part and denied in part as follows:

(1) defendants' motion to strike paragraph 12 of the complaint is granted;

(2) defendants' motion to dismiss the claim for product liability under O.R.S. 30.920 for failure to state a claim for relief is denied;

(3) defendants' motion to strike the prayer for punitive damages in the product liability claim is denied;

(4) defendants' motion to dismiss Count I (negligence per se) of the negligence claim is denied;

(5) defendants' motion to strike the prayer for non-economic damages is denied with leave to renew;

(6) defendants' motion to strike the claim for fraud is denied;

(7) defendants' motion to make the claim for fraud more definite and certain is denied with leave to renew; and

(8) defendants' motion to strike the prayer for punitive damages in the claim for fraud is denied.

### ORDER

IT IS HEREBY ORDERED that defendants' motions against the complaint (# 11) are GRANTED in part and DENIED in part as follows:

(1) defendants' motion to strike paragraph 12 of the complaint is GRANTED;

(2) defendants' motion to dismiss the claim for product liability under O.R.S. 30.920 for failure to state a claim for relief is DENIED;

(3) defendants' motion to strike the prayer for punitive damages in the product liability claim is DENIED;

(4) defendants' motion to dismiss Count I (negligence per se) of the negligence claim is DENIED;

(5) defendants' motion to strike the prayer for non-economic damages is DENIED with leave to renew;

(6) defendants' motion to strike the claim for fraud is DENIED;

(7) defendants' motion to make the claim for fraud more definite and certain is DENIED with leave to renew; and

(8) defendants' motion to strike the prayer for punitive damages in the claim for fraud is DENIED.