Argued and submitted November 21, 2002, affirmed January 29, 2003

Michael RUSSELL,
*Appellant,*

*v.*

DEERE & COMPANY,
a Delaware corporation,
*Respondent.*

99-01427-CV; A114045

61 P3d 955

Kenneth M. Tharp argued the cause for appellant. With him on the briefs was Frohnmayer, Deatherage, Pratt, Jamieson, Clarke & Moore, P.C.

Timothy C. Gerking argued the cause for respondent. With him on the brief was Brophy, Mills, Schmor, Gerking & Brophy, LLP.

Before Haselton, Presiding Judge, and Deits, Chief Judge, and Linder, Judge.

LINDER, J.

## LINDER, J.

This appeal arises out of a product liability action involving a defective combine. The trial court granted summary judgment in favor of defendant Deere & Company on the ground that plaintiff had not presented evidence sufficient to create a jury question as to whether the combine was unreasonably dangerous to persons or property. *See* ORS 30.920. In reviewing plaintiff's challenge to that ruling on appeal, we view the facts in the light most favorable to plaintiff, along with all reasonable inferences flowing from those facts, and uphold the judgment if there is no genuine issue of material fact and defendant is entitled to judgment as a matter of law. ORCP 47 C; *Jones v. General Motors Corp.*, 325 Or 404, 408, 939 P2d 608 (1997). We affirm.

Although the parties disagree as to their significance, the facts in this case are not in dispute. Plaintiff purchased a combine and platform header with pickup reel ("combine"), manufactured by defendant, from a local dealer for use in his custom farming business. During the 1997 harvest season, plaintiff used the combine to harvest grain for 10 farmers. Near the end of that season, plaintiff learned from one of those farmers, who noticed a "terrible streak of green" in his field, that the combine had left a substantial amount of grain on the ground after cutting it from the stalks. Plaintiff then discovered that the same thing had happened to the crops of all 10 farmers for whom he had harvested that summer. Plaintiff paid all 10 farmers for the losses they allegedly sustained as a result of the combine's malfunction, which totaled $106,255.93. Plaintiff then filed a "complaint for indemnity" based on a product liability theory, alleging that the combine "experienced a manufacturing defect in that it failed to properly separate, collect and store seed from the stalks of the rye, wheat, barley and oat grain straw."

Defendant moved for summary judgment asserting, among other things, that the alleged defect did not make the combine "unreasonably dangerous," as is required for recovery under ORS 30.920. The trial court agreed with defendant that "the damage alleged in plaintiff's complaint does not

establish that the product was unreasonably dangerous to persons or to property" and granted defendant's motion.[1]

On appeal, the parties renew the arguments that they made to the trial court. Specifically, plaintiff argues that the defect in the combine rendered it unreasonably dangerous because it "destroyed a significant amount of the very product it is designed to harvest." In addition, plaintiff asserts that the determination of whether a defect makes a product unreasonably dangerous is for the jury and should not have been decided by the court in the context of a motion for summary judgment. In response, defendant does not dispute that the combine was defective or that it sold (through the dealer) the combine to plaintiff. Instead, defendant contends only that the loss that plaintiff sustained was purely economic in nature and that, as a matter of law, a jury could not find on the basis of such "damage" that the defect in the combine rendered it unreasonably dangerous.[2] As we explain below, we agree with defendant.

Product liability actions in Oregon are governed by ORS 30.900 to 30.920. ORS 30.920 sets out the elements for recovery in a product liability action. As relevant to this case, it provides:

"(1) One who sells or leases any product in a defective condition *unreasonably dangerous to the user or consumer*

---

[1] Plaintiff later moved for reconsideration. The court granted that motion but adhered to its previous decision. Plaintiff contends that, based on the letter opinion adhering to the original ruling, the trial court also reasoned that the grain did not qualify as "property." We do not understand that to be the trial court's position. Even if plaintiff is correct in that regard, however, we affirm the trial court based on its rationale in its original letter opinion granting summary judgment that the plaintiff presented insufficient evidence that the combine was "unreasonably dangerous to persons or to property."

[2] Defendant makes two additional arguments. First, it argues that plaintiff's claim should fail because plaintiff does not own the property that was allegedly damaged by the combine. Defendant did not raise this argument below, and we decline to consider it for the first time on appeal.

Second, defendant contends that the combine purchase agreement, which contained a limited warranty and provisions limiting defendant's liability, precludes plaintiff's product liability claim. Given our resolution of the adequacy of plaintiff's evidence to create a jury question on all elements of plaintiff's product liability claim, we need not reach that argument.

*or to the property of the user or consumer* is subject to liability for physical harm or damage to property caused by that condition[.]

"* * * * *

"(3) It is the intent of the Legislative Assembly that the rule stated in subsection[ ] (1) * * * of this section shall be construed in accordance with the Restatement (Second) of Torts sec. 402A, Comments a to m (1965)."

(Emphasis added.)

 Under that statute, to recover on a product liability theory, a plaintiff must establish not only that the product was defective but also that the defect was of a type that rendered the product unreasonably dangerous to persons or property. Not every defect that causes a product to be in a condition not reasonably contemplated by a user is an "unreasonably dangerous" one. *Brown v. Western Farmers Assoc.*, 268 Or 470, 478, 521 P2d 537 (1974).[3] A defective product presents an unreasonable danger when it is "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." *McCathern v. Toyota Motor Corp.*, 332 Or 59, 77, 23 P3d 320 (2001); *Restatement (Second) of Torts* § 402A comment i (1965). To be unreasonably dangerous, a defective product need not be "man-endangering"; it is sufficient that the defective product poses an unreasonable danger to property. *Gladhart v. Oregon Vineyard Supply Co.*, 164 Or App 438, 453, 994 P2d 134 (1999), *rev'd on other grounds*, 332 Or 226, 26 P3d 817 (2001). A defective product is not unreasonably dangerous, however, if it poses a risk only to itself; rather, the defective product must pose a risk to *other* property. *Id.* In

---

[3] Although the legislature had not adopted section 402A of the *Restatement* at the time that the court decided *Brown*, the Oregon Supreme Court previously had adopted section 402A as a matter of common law. *See Heaton v. Ford Motor Co.*, 248 Or 467, 470, 435 P2d 806 (1967). In later adopting that section of the *Restatement*, the legislature is presumed to have done so with an awareness of the preexisting judicial decisions. *See Owens v. Maass*, 323 Or 430, 438, 918 P2d 808 (1996) (citing *State v. Waterhouse*, 209 Or 424, 436, 307 P2d 327 (1957)). Thus, *Brown* not only remains authoritative, but it arguably qualifies as an interpretation that has become part of the statute and is subject to change only by the legislature. *See generally Holcomb v. Sunderland*, 321 Or 99, 105, 894 P2d 457 (1995).

addition, a defective product that merely causes property to decrease in value or subjects the user to economic loss is not unreasonably dangerous. *Brown*, 268 Or at 480.

■ Ordinarily, the determination of whether a product is unreasonably dangerous is a jury question. *McCathern*, 332 Or at 77. ORS 30.910,[4] however, establishes a disputable presumption that a defective product is not unreasonably dangerous, reinforcing the common-law principle that the mere existence of a defect does not support an inference that a product presents an unreasonable danger to persons or property. Thus, under ORS 30.910 a plaintiff may not rely on the bare assertion of a defect from which a jury may infer unreasonable dangerousness; rather, a party must affirmatively put forth some evidence on the issue of dangerousness before the issue may properly be submitted to a jury.

Neither ORS 30.920 nor the applicable comments to section 402A of the *Restatement* set out what is required to demonstrate that a product is unreasonably dangerous. The Oregon Supreme Court's decision in *Brown*, however, provides significant guidance relevant to the particular facts of this case. In *Brown*, the plaintiffs were egg farmers who bought defective chicken feed from the defendant that, when fed to the plaintiffs' chickens, caused their eggs to taste bad and rendered the chickens valueless. The plaintiffs sued the defendants on a product liability theory to recover the value of the unpalatable eggs and the economically worthless chickens, as well as lost profits and the cost of the defective feed. 268 Or at 471. The court rejected the plaintiffs' claim because their complaint lacked an adequate allegation that the defective feed was unreasonably dangerous, as opposed to merely defective.[5] *Id.* at 478. The court explained:

---

[4] ORS 30.910 provides:

"It is a disputable presumption in a products liability civil action that a product as manufactured and sold or leased is not unreasonably dangerous for its intended use."

[5] In *Brown*, the court left open the question whether a defect that threatened only property and not persons could be "unreasonably dangerous." *Brown*, 268 Or at 480. We resolved that question in *Gladhart* by concluding that danger to persons is not necessary. 164 Or App at 452-53.

"We believe * * * that the term 'unreasonably danger-
ous,' as used in [*Restatement*] Section 402A as the basis for
the imposition of strict liability, without proof of negligence,
was not intended to be so 'watered down' as to extend to
any defect which in any way may decrease the value of
property[.]"

*Id.* at 480.

Our more recent decision in *Gladhart* likewise
involved property damage. We concluded that the complaint,
which alleged damage in the form of the physical destruction
of the plaintiffs' property, was adequate to state a product lia-
bility claim. In *Gladhart*, the defendants sold the plaintiffs
grape plants for their vineyard that were guaranteed to be
free of a microscopic aphid known to kill grape vines. The
plaintiffs later discovered that their vineyard had become
infested with aphids that allegedly had been introduced by
the defendants' plants. 164 Or App at 440. The plaintiffs
brought a claim against the defendants under ORS 30.920,
alleging that the grape plants were "unreasonably dangerous
to the Plaintiffs' property * * * in that [the aphid infestation]
has started, and will cause, the eventual death of all the
Plaintiffs' grape vines." *Id.* at 450. We concluded that the
plaintiffs alleged sufficient facts in their complaint—*viz.*,
that the infested grape plants would in time cause the death
of the plaintiffs' entire vineyard—to establish that the plants
posed an unreasonable danger to the other plants in the vine-
yard. *Id.* at 454.[6]

██ In combination, *Brown* and *Gladhart* establish that
mere economic loss unaccompanied by physical injury to
property will not suffice for a product liability claim but phys-
ical destruction of, or perhaps other significant physical
injury to, the property will.[7] Here, plaintiff alleged and pre-
sented evidence only of economic loss. The defect in the com-
bine kept it from performing the function for which plaintiff

---

[6] Applying ORS 30.920, a federal district court reached a similar conclusion in
*Carpenter v. Land O' Lakes, Inc.*, 880 F Supp 758 (D Or 1995). In that case, the
plaintiff dairy farmers purchased contaminated feed from the defendants that
allegedly caused the death of 112 cows and significant health problems for hun-
dreds more. The court concluded that the plaintiffs' allegations of serious physical
injury to the cattle were sufficient to state a claim that the defective feed posed an
unreasonable danger to the cattle. *Id.* at 763.

[7] Because the summary judgment record in this case establishes no physical
injury whatsoever, we need not and do not decide in this case the extent of physical

had purchased it: harvesting grain. Plaintiff alleged that the combine failed to "properly separate, collect and store" the grain after cutting it from the stalks, thus reducing the amount of grain harvested by leaving a substantial amount of the crop lying in the field. The summary judgment record establishes that plaintiff learned of the defect in the combine when one of his farmer clients reported seeing a "terrible streak of green" in his field. In other words, the client saw that the grain had germinated, suggesting that it remained intact and viable. In short, the defect in the combine may have made it commercially impractical for plaintiff to collect the grain off the ground. But that fact at most reduced the economic value of the grain crop, which is a type of "damage" that, as a matter of law, does not equate with unreasonable dangerousness. *See Brown* at 480. Viewed in the light most favorable to plaintiff, the summary judgment record establishes only economic losses identical in nature to those suffered by the egg farmers in *Brown*—that is, economic losses unaccompanied by physical injury to plaintiff's property.

Consequently, because plaintiff did not produce evidence that the defective combine physically injured or destroyed other property, a jury could not find the defect to be unreasonably dangerous. The trial court therefore did not err in granting summary judgment to defendant.

Affirmed.

---

injury, short of destruction, that is necessary to create a jury question on the issue of unreasonable dangerousness.