Argued and submitted April 20, at Franklin High School, Portland,
reversed and remanded December 6, 2006

Charles HARRIS
and Kary A. Harris,
co-trustees of the Harris Family Trust,
*Appellants,*

*v.*

George R. SUNIGA
and George R. Suniga, Inc.,
an Oregon corporation,
*Respondents.*

George R. SUNIGA
and George R. Suniga, Inc.,
an Oregon corporation,
*Third-Party Plaintiffs,*

*v.*

HARVEY CAIN CONSTRUCTION, INC.,
an Oregon corporation;
Color Flow Painting, Inc.;
Paul Allport,
dba Triple J Remodeling and Roofing;
and Scott A. Boyd,
dba Boyd's Painting,
*Third-Party Defendants.*

03C-16648; A125316

149 P3d 224

Norman R. Hill argued the cause for appellants. With him on the briefs was Webb, Martinis & Hill.

Bruce R. Gilbert argued the cause for respondents. With him on the brief were Graham M. Sweitzer and Smith Freed & Eberhard, PC.

Dean E. Aldrich argued the cause and filed the brief *amicus curiae* for Murrey and JoAnn Albers; Richard and Gwynne Christle; Elizabeth Christopherson and Marjorie Kim Kelley; Frances Matson; the Denney Road Rowhomes Owners Association, Inc.; and Orenco Place Owners Association. With him on the brief were J. Lee Street, Sarah E. Greenley, and The Aldrich Law Office, P.C.

Phillip E. Joseph argued the cause and filed the brief *amicus curiae* for Unit Owners of Prescott Condominiums; Association of Unit Owners of Lakewood Lofts and Condominiums; Chinh and Tam Tran; Daniel and Stephanie Harmond; and Brian and Janet Mattson. With him on the brief were James T. McDermott, James C. Prichard, Robert W. Wilkinson, and Ball Janik LLP.

Thomas M. Christ argued the cause and filed the brief *amicus curiae* for Mutual of Enumclaw Insurance Company. With him on the brief were Thomas W. Brown and Cosgrave Vergeer Kester LLP.

Todd S. Baran and Todd S. Baran, P.C., and Kenneth Hobbs and Stafford Frey Cooper, Seattle, jointly filed the brief *amicus curiae* for Degussa Wall Systems, Sto Corp., and Dryvit Systems, Inc.

Frederic E. Cann and Cann Lawyers filed the brief *amicus curiae* for Northridge Remodeling Company.

Before Landau, Presiding Judge, and Ortega, Judge, and Wilson, Judge pro tempore.

LANDAU, P. J.

**LANDAU, P. J.**

Plaintiffs are the trustees of a trust that owns an apartment building that defendants built. The trust, however, is not the first owner and has no contractual relationship with defendants. When plaintiffs discovered defects in the construction of the apartment building, they initiated this action against defendants for negligent construction. Defendants moved for summary judgment, arguing that plaintiffs' negligence claim is barred by the "economic loss" doctrine; that is, because the damage to the apartment building is in the nature of purely economic loss, a claim for negligence will not lie in the absence of a special relationship between the parties. The trial court agreed with defendants and entered judgment dismissing plaintiffs' claim. Plaintiffs appeal, arguing that the trial court erred, because their claim is based on damage to their property and is not therefore barred by the economic loss doctrine. We agree with plaintiffs and reverse and remand.

The relevant facts are uncontested, at least for the purposes of the issues on appeal. Defendants were the general contractors of an apartment complex in Salem, known as the Cascade View Apartments. They built the complex for a California investment company. In 2002, the investment company sold the apartment complex to the Harris Family Trust, of which plaintiffs are the trustees. Shortly after purchasing the complex, plaintiffs discovered certain defects in the construction.

Plaintiffs filed a complaint against defendants alleging that defendants had negligently built the apartment complex. Specifically, plaintiffs alleged that defendants had failed to install required flashings on the decks, concrete walkways, landings, gutters, laminates, and bellybands. They further alleged that defendants had failed to install properly certain wall caps, to fasten properly two-by-fours to trim the outside of windows, and to paint the siding. Plaintiffs alleged that, as a result of those defects in construction, the buildings have suffered significant dry rot, which will cost approximately $376,000 to repair.

After answering, defendants moved for summary judgment contending that, among other things, plaintiffs' claim is barred by the economic loss doctrine. According to defendants, Oregon law permits a claim for purely economic loss only against a defendant who is in a special relationship with the plaintiff. In this case, defendants argued, the damage to the apartment buildings is, in effect, an economic loss to plaintiffs' investment. As a result, in the absence of a special relationship between the parties, their claim cannot be maintained. Because there is no such special relationship in this case, defendants concluded, the claim must be dismissed.

Plaintiffs did not dispute that Oregon courts recognize the economic loss doctrine. They did dispute its applicability. According to plaintiffs, the doctrine applies to economic loss to intangibles, such as damage to reputation, lost profits, decline in stock value, and the like and does not apply to claims based on damage to tangible physical structures. In this case, they argued, their claim is based on the existence of extensive dry rot, which physically damaged the wood with which the buildings were negligently constructed. That, plaintiffs concluded, is a cognizable negligence claim under Oregon law.

The trial court granted defendants' motion. The trial court reasoned that, although there appeared to be some Supreme Court precedent supporting plaintiffs' right to recover damages in negligence under the circumstances of this case, more recent case law appears implicitly to have overruled that earlier precedent.

■ On appeal, plaintiffs contend that the trial court erred, while defendants assert that the trial court ruled correctly. In support of those contentions, the parties essentially resort to the same arguments that they advanced to the trial court—defendants, that the damage at issue is mere economic loss, and plaintiffs, that their claim is predicated on damage to physical property.

On review of the trial court's decision on summary judgment, we review the record to determine whether there are genuine issues of material fact and whether the moving party was entitled to judgment as a matter of law. ORCP 47 C. In this case, as we have noted, the relevant facts are not

in contention; the sole issue before us is the legal issue whether plaintiffs' negligence claim is barred by the economic loss doctrine.

We begin with the general rule that all persons are liable in negligence if their conduct unreasonably creates a foreseeable risk of harm to others. *Slogowski v. Lyness*, 324 Or 436, 441, 927 P2d 587 (1996). Ordinarily, establishing a duty is not an element of a negligence claim in Oregon law. As the Oregon Supreme Court explained in *Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 17, 734 P2d 1326 (1987),

> "unless the parties invoke a status, a relationship, or a particular standard of conduct that creates, defines, or limits the defendant's duty, the issue of liability for harm actually resulting from defendant's conduct properly depends on whether that conduct unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff."

The foregoing statement of the general rule is subject to some exceptions. In *Fazzolari* itself, for example, the court acknowledged that "common-law negligence traditionally has excluded some categories of quite predictable injuries and claimants." *Id.* at 7. The court cited, among others, the example of claims for "economic" injuries. *Id.*

The common-law "economic loss doctrine" to which the court referred dates back at least to the mid-nineteenth century and the concern of courts at that time with the potential for indeterminate liability and burdensome litigation if economic losses could be pursued in tort. *See, e.g., Connecticut Mut. Life Ins. Co. v. N.Y. & N.H.R. Co.*, 25 Conn 265, 65 AD 571 (1856); *see also* Sidney R. Barrett, Jr., *Recovery of Economic Loss in Tort for Construction Defects: A Critical Analysis*, 40 SC L Rev 891 (1989) (tracing history of economic loss doctrine).

The rule found recognition in Oregon case law at least as early as the mid-1960s. In *Snow v. West*, 250 Or 114, 440 P2d 864 (1968), the Supreme Court did not mention the economic loss rule as such, but it held that an employer could

not maintain an action against a third person for loss of services of an employee whose injury or death was caused by the third person's negligence. *Id.* at 115-18.

In *Ore-Ida Foods v. Indian Head*, 290 Or 909, 627 P2d 469 (1980), the court considered another case involving an action by an employer against a third-party tortfeasor for economic losses arising out of the death of an employee. This time, the court more explicitly—and expansively—relied on the economic loss doctrine. Citing, among other things, its opinion in *Snow*, the court commented that "[t]he prevailing rule in the United States and England is that a plaintiff may not recover for economic loss resulting from negligent infliction of bodily harm to a third person." *Id.* at 916. The court listed as possible justifications for the rule that damages for economic loss are too remote, that such damages are unforeseeable, and that permitting such damages has the potential of leading to "limitless recoveries and * * * ruinous consequences." *Id.* at 916-17. The court found especially persuasive the latter justification. *Id.* at 917-18. Finding no meaningful distinction between the case before it and *Snow*, the court concluded that the employer's action could not be maintained.

In *Hale v. Groce*, 304 Or 281, 744 P2d 1289 (1987), the court relied on the economic loss doctrine in addressing the extent to which an alleged intended beneficiary of a will could maintain an action against an attorney for failing to carry out the direction of the testator to include a gift to the beneficiary in a will. The court commented that

> "one ordinarily is not liable for negligently causing a stranger's purely economic loss without injuring his person or property. It does not suffice that the harm is a foreseeable consequence of negligent conduct that may make one liable to someone else, for instance to a client. Some source of a duty outside the common law of negligence is required."

*Id.* at 284 (citations omitted).

*Hale*, in turn, was later read in *Onita Pacific Corp. v. Trustees of Bronson*, 315 Or 149, 843 P2d 890 (1992), to have established that the economic loss doctrine does not operate as an absolute bar to recovery in tort; what is required is a special duty, the breach of which may form the basis for a tort

claim. In that case, the plaintiff purchasers of real property sued the defendant sellers of that property for economic losses arising out of alleged negligent misrepresentations that the defendants had made in the course of the transaction. Citing *Hale*, the court stated that "[o]ur precedents establish that a negligence claim for the recovery of economic losses caused by another must be predicated on some duty of the negligent actor to the injured party beyond the common law duty to exercise reasonable care to prevent foreseeable harm." *Onita Pacific Corp.*, 315 Or at 159. The court defined "economic losses" as "financial losses such as indebtedness incurred and return of monies paid, as distinguished from damages for injury to person or property." *Id.* at 159 n 6. When a party seeks to recover such economic losses in tort, the court explained, "the concept of duty as a limiting principle takes on a greater importance than it does with regard to the recovery of damages for personal injury or property damage." *Id.* at 159. The court ultimately concluded that, although arm's-length transactions give rise to no such duty, some professional relationships may give rise to a duty of care, the breach of which could support a claim in negligence for purely economic harm. *Id.* at 161.

More recently, in *Oregon Steel Mills, Inc. v. Coopers & Lybrand, LLP*, 336 Or 329, 83 P3d 322 (2004), the court addressed whether a defendant accounting firm could be held liable to a client in negligence for economic losses that occurred as a result of changes in the market price of certain stock. Citing *Hale* and *Onita Pacific Corp.*, the court reiterated that such liability for purely economic harm " 'must be predicated on some duty of the negligent actor to the injured party beyond the common law duty to exercise reasonable care to prevent foreseeable harm.' " *Oregon Steel Mills, Inc.*, 336 Or at 341 (quoting *Onita Pacific Corp.*, 315 Or at 159).

■       It is thus clear that, under the version of the economic loss doctrine that is recognized in Oregon, a plaintiff seeking damages for purely economic losses in negligence can do so only on the basis of the breach of a duty other than the ordinary duty to exercise reasonable care to avoid foreseeable harm. The question remains, however, as to what sort of "economic losses" trigger that rule. For if plaintiffs' claim in this

case does not involve such economic losses, the limitations of the economic loss doctrine do not apply.

The only case in which the Supreme Court provided an explicit definition for the term "economic loss" is *Onita*, in which the court stated that "economic losses" refers to "financial losses such as indebtedness incurred and return of monies paid, as distinguished from damages for injury to person or property." 315 Or at 159 n 6. In subsequent cases, we have followed that lead and defined "economic losses" to refer to financial losses to intangibles. *See, e.g., Indian Creek Development Co. v. City of Hood River*, 203 Or App 231, 125 P3d 50 (2005), *rev den*, 340 Or 158 (2006) (lost profits); *Miller v. Mill Creek Homes, Inc.*, 195 Or App 310, 97 P3d 687 (2004) (loss of flood insurance proceeds); *SFG Income Fund, LP v. May*, 189 Or App 269, 274, 75 P3d 470 (2003) (loss of expected proceeds resulting from negligent misinformation that property was buildable); *Lewis-Williamson v. Grange Mutual Ins. Co.*, 179 Or App 491, 39 P3d 947 (2002) (undervaluation of the plaintiff's residence in a homeowners insurance policy); *Portland Trailer & Equipment v. A-1 Freeman Moving*, 166 Or App 651, 5 P3d 604, *adh'd to on recons*, 168 Or App 654, 4 P3d 741 (2000) (attorney fees incurred as a result of the defendants' initiation of the predicate civil proceeding); *Roberts v. Fearey*, 162 Or App 546, 556, 986 P2d 690 (1999) (failed loan transactions); *Oregon Life and Health v. Inter-Regional Financial*, 156 Or App 485, 967 P2d 880 (1998) (loss of investment); *Allstate Ins. Co. v. Tenant Screening Services, Inc.*, 140 Or App 41, 914 P2d 16 (1996) (money paid in settlement of personal injury claim).

We recognize that, strictly speaking, the fact that prior cases have defined "economic losses" to include financial losses to intangibles does not necessarily mean that the term is limited to such losses. One Supreme Court decision, however, leads us to conclude that, at the least, the term does not refer to the sort of property damage that is involved in this case.

In *Newman v. Tualatin Development Co. Inc.*, 287 Or 47, 597 P2d 800 (1979), the defendant built a complex of

townhouses and then sold them. The owners of the town-houses discovered that the defendant had negligently constructed them; specifically, the water pipes were deteriorating and had caused water damage to the premises. The owners brought an action against the builder for, among other things, negligence and asked the trial court to certify the case as a class action. The trial court divided the plaintiffs into two groups—owners who had purchased the townhouses directly from the defendant (the "privity owners") and those who had not purchased the townhouses directly from the defendant (the "nonprivity owners"). The trial court certified the former but declined to certify the latter on the ground that the nonprivity plaintiffs could not maintain a negligence action against a remote seller. The defendant appealed, and the nonprivity plaintiffs cross-appealed.

The Oregon Supreme Court affirmed the certification of the class as to the plaintiffs who were original purchasers of the townhouses. It then reversed the decision of the trial court not to certify the nonprivity plaintiffs. "We hold," the court stated, "the nonprivity owners can prevail if they prove the defendant was negligent." 287 Or at 52. The court continued:

> "We know of no reason why the ambit of liability for negligence in the transfer of real property should be limited by privity of contract. In the present case * * * it was foreseeable that those buying from defendant would in turn be selling to others and the alleged harm to these nonprivity owners would have been prevented if the defendant used due care."

*Id.* at 53.

On its facts, *Newman* is materially indistinguishable from this case. In both cases, the defendants are builders of housing complexes. In both cases, the plaintiffs were not original purchasers directly from the defendants, but rather owners who purchased the homes from those who were. In both cases, the plaintiffs assert claims against the original builder for negligent construction, based on the deterioration of the physical structure of the buildings because of water damage. It seems to us necessarily to follow that the cases should be treated in similar fashion. In *Newman*, the court

held that there was no impediment to the claim. The court did not explicitly refer to the economic loss doctrine, but we understand the necessary implication of its decision to be that the damage at issue was not economic loss. We do not understand why this case should be treated differently.

Defendants acknowledge *Newman* but insist that it has been implicitly overruled by subsequent case law. According to defendants, *Newman* is "dated," having been superseded by the Supreme Court's recognition of the economic loss rule in *Fazzolari* and *Onita*, as we recognized in *Jones v. Emerald Pacific Homes, Inc.*, 188 Or App 471, 71 P3d 574, *rev den*, 336 Or 125 (2003).

Defendants' argument, however, assumes that the economic loss rule had not been recognized before *Fazzolari* and *Onita*. That is incorrect, as *Snow*, *Ore-Ida Foods*, and *Hale* plainly demonstrate. Moreover, neither *Fazzolari* nor *Onita* mentioned *Newman*, much less overruled it. Nor has any other more recent decision of the Supreme Court cast doubt on the continued vitality of *Newman*'s holding.

Aside from that, defendants claim more from our opinion in *Jones* than a fair reading of it will bear. In *Jones*, we addressed only the issue whether a breach of contract can give rise to tort liability. The economic loss doctrine was neither discussed nor applied. In that case, the defendant built the plaintiffs a custom home, with which the plaintiffs were unsatisfied. The plaintiffs sued the defendant for both breach of contract and for negligence. The trial court dismissed the negligence claim on the ground that it was predicated on the breach of the same duty that formed the basis for the plaintiffs' contract claim. On appeal, we affirmed on precisely the same ground. Citing *Onita*, among other cases, we noted the general rule that, while it is possible that a breach of contract can give rise to tort liability, that possibility exists only when tort liability is predicated on the breach of a duty independent of the duty that forms the basis for the contract claim. *Jones*, 188 Or App at 476-77.

Defendants insist that such a reading of the case law conflicts with analogous case law concerning liability for defective products. To establish a claim for product liability, a plaintiff must prove that the defect in the product was of the

type that rendered the product unreasonably dangerous to the user or consumer or to the property of the user or consumer. ORS 30.920. To be unreasonably dangerous, the defective product need not be "[person]-endangering." *Russell v. Deere & Co.*, 186 Or App 78, 82, 61 P3d 955 (2003). It is sufficient if the product poses an unreasonable danger to the person's property. A product is not considered to be unreasonably dangerous to property if the only risk it poses is to itself and not to other property. *Id.* A defect that merely decreases the product's value and subjects the user to economic loss is not unreasonably dangerous, *Brown v. Western Farmers Assoc.*, 268 Or 470, 478, 521 P2d 537 (1974), and the costs to remedy losses due to defects in the product itself are generally considered to be economic loss, not property damage. *See Russell*, 186 Or App at 82 (defective combine resulted in economic loss only, because it did not cause damage to other property). In contrast, damage to "other property" owned by the plaintiff is considered to be other than economic loss. *Gladhart v. Oregon Vineyard Supply Co.*, 164 Or App 438, 446, 994 P2d 134 (1999), *rev'd on other grounds*, 332 Or 226, 26 P3d 817 (2001) (phylloxera brought in on new grapes spread to mature grapevines and thus caused damage to property).

In defendants' view, the reasoning from Oregon's product liability cases concerning the distinction between damage to the defective product itself and damage to "other property" should carry over to negligence cases as well. Defendants assert that, in negligence claims based on construction defects, the pertinent "product" is the entire completed building, and that damage to the structure at most reduces the value of the product, but is not to be considered property damage, unless other property is harmed. In other words, construction defects that harm only the building have not caused property damage.

The short answer to defendants' proposed analogy is that the Oregon appellate courts simply have not recognized it. Our cases have concluded that buildings are not "products" for product liability purposes. Directly on point in that regard is *Association of Unit Owners v. Dunning*, 187 Or App 595, 617, 69 P3d 788 (2003), in which we held that condominium buildings that were constructed on site were not "chattels" or

"goods" and therefore were not "products" in the meaning of ORS 30.920. The same conclusion applies to an apartment building.

Defendants finally argue that the "vast majority" of other state courts that have considered the issue have concluded that the cost of alleged construction defects constitutes "economic loss" that cannot be remedied in negligence. At the outset, we note that the decisions of courts in other jurisdictions—whether a "vast majority" or otherwise—are not binding on this court. We welcome reference to such decisions, but only for the strength of the reasoning on which they are based and only to the extent that it may be consonant with existing Oregon precedent, not because a particular nose count weighs one way or the other. *See Koch v. Spann*, 193 Or App 608, 616 n 2, 92 P3d 146, *rev den*, 337 Or 547 (2004) ("We are not particularly impressed with characterizations of a doctrine as the 'majority' or the 'minority.' ").

As for the cases to which defendants direct our attention in this case, we note that they, along with others that we have reviewed, reflect a wide variety of approaches to the issue. Nearly all of the cases involve what the courts describe as defective products. *See, e.g., Bay Breeze Condominium Association, Inc. v. Norco Windows, Inc.*, 257 Wis 2d 511, 651 NW2d 738 (Ct App 2002) (defective windows did not fall under "other property" exception to economic loss rule); *Casa Clara Condominium Association, Inc. v. Charley Toppino and Sons, Inc.*, 620 So 2d 1244, 1245 (Fla 1993) (defective concrete); *In re Masonite Corp.*, 21 F Supp 2d 593, 602 (ED La 1998) (defective siding). Even then, there appears to be no consistent rationale for the various decisions. Indeed, it has long been a criticism of this area of the law that "[t]he reasons for this difference in treatment of indirect economic loss and physical damage do not derive from the theory or the logic of tort law." Fleming James, Jr., *Limitations on Liability for Economic Loss Caused by Negligence: A Pragmatic Appraisal*, 25 Vand L Rev 43, 44 (1972). We conclude that defendants' references to the decisions of courts in other states is not persuasive.

Several *amici curiae* also suggest that permitting plaintiffs to recover in negligence makes no sense because, in

effect, plaintiffs are obtaining relief that not even the persons who sold them the buildings could have obtained—namely, damages for negligence. We acknowledge that, in the abstract, *amici* have a point. Indeed, in some respects, the position that they are asserting better reflects the nine-teenth-century concerns that gave rise to the economic loss doctrine in the first place, which viewed "economic loss" as the loss of an expectancy that is created by contract and, as such, is best remedied in an action on the contract. *See, e.g.*, Barrett, *Recovery of Economic Loss in Tort*, 40 SC L Rev at 895-901. Under that theory, a builder's obligations are defined by contract and do not expand beyond that contract merely because the initial purchaser sold the property. The problem is that Oregon case law has not developed with that aspect of the rule in mind. *See Ore-Ida Foods*, 290 Or at 917. Moreover, if *amici* were correct, then *Newman* logically could not have turned out as it did. The argument of *amici*, in fact, is essentially the analysis of the trial court in *Newman*, which the Supreme Court held was incorrect.

In short, plaintiffs' negligence claim is not barred by the economic loss doctrine, because it is based on damage to property, not economic loss. It necessarily follows that the trial court erred in granting defendants' motion for summary judgment and in entering judgment dismissing plaintiffs' claim.

Reversed and remanded.