**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JUL 25 2017

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

|  |  |
|---|---|
| BENSON TOWER CONDOMINIUM OWNERS ASSOCIATION, an Oregon nonprofit corporation, | No.   15-35119 |
|  | D.C. No. 3:13-cv-01010-SI |
| Plaintiff-Appellee, |  |
| v. | MEMORANDUM[*] |
| VICTAULIC COMPANY, a foreign corporation, |  |
| Defendant-Appellant. |  |

Appeal from the United States District Court
for the District of Oregon
Michael H. Simon, District Judge, Presiding

Argued and Submitted July 11, 2017
Portland, Oregon

Before:  BERZON, WATFORD, and OWENS, Circuit Judges.

Defendant-Appellant Victaulic Co. (Victaulic) appeals from the district

court's denial of its renewed motion for judgment as a matter of law and its motion

for a new trial.  We affirm.

---

[*]        This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

1.     A jury verdict may be reversed for lack of substantial evidence only if the evidence "permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002).  Here, substantial evidence supported the jury's determination that Victaulic's defective products caused damage to Benson Tower Condominium Owners Association's (Benson) potable water supply, which is property separate from the defective valves and couplings.

Under Oregon law, a seller is liable for "damage to property" caused by a product sold "in a defective condition unreasonably dangerous to the user . . . or to the property of the user."  Or. Rev. Stat. § 30.920.  Benson provided substantial evidence showing that Victaulic's plumbing products caused damage to its potable water supply.  Residents of Benson Tower and contractors and staff testified to the presence of black particles throughout the building, from the hot water storage tanks to the kitchen sinks and dishwashers inside the condominium units.  Various witnesses noted the similarities between the black, rubbery particles and Victaulic's corroded valves and couplings.  Multiple experts opined that the black particles were ethylene propylene diene monomer (EPDM) from Victaulic's valves and couplings that had prematurely degraded after contact with chloramine, a chemical commonly added to municipal water supplies.  Victaulic's EPDM was

2

"improperly formulated" and "significantly poorer" than the materials of competitors. The degraded byproduct of chloramine and EPDM likely included "carbon black," which several experts noted was a potential carcinogen.

Oregon case law does not require "significant damage" to state a colorable claim under Oregon products liability law. The text of the statute refers simply to "damage to property." Or. Rev. Stat. § 30.920. *Russell v. Deere & Co.*, 186 Or. App. 78 (2003), does not hold to the contrary. Although that case alluded to "significant physical injury" to a product as sufficient for a products liability claim, the issue before the court there was whether the defective combine harvester in question was unreasonably dangerous under the statute.[1] *Id.* at 84-85. Other Oregon cases interpreting the products liability statute make no mention of any requirement that the damage caused by an unreasonably dangerous product be "significant." *See Harris v. Suniga*, 209 Or. App. 410, 421 (2006); *Gladhart v. Or. Vineyard Supply Co.*, 164 Or. App. 438, 450-54 (1999).

Victaulic's attempt to re-cast the damaged property—the potable water system and the water flowing through it—as part of an integrated "plumbing system" that includes the defective valves and couplings is no more successful.

---

[1] Victaulic is not independently appealing the determination that its plumbing products were unreasonably dangerous.

3

Here the "other property" damaged is the water supply. *See City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1050 (9th Cir. 2014) (contamination of groundwater supply is damage to property). Describing everything involved in the delivery of water to Benson residents at a high level of generality as a "system" does not make the water supply itself—the damaged property—the same product as Benson's defective valves and couplings. The evidence at trial supports the finding that Victaulic's parts damaged "other property," namely the potable water at Benson Tower.[2]

The jury heard substantial evidence showing that the defective plumbing components degraded prematurely and leached possible carcinogens into Benson's potable water supply. This evidence is sufficient to support the verdict.

2. Victaulic waived the argument that the district court abused its discretion in admitting evidence concerning possible health issues relating to the degradation of the synthetic rubber in Victaulic's products. When Benson at trial adduced testimony or argued that "carbon black," a byproduct of degraded EPDM, is a possible carcinogen, Victaulic failed to object on the basis of undue prejudice.

---

[2] Victaulic's reliance on the Restatement (Second) of Torts, incorporated in Oregon law, *see* Or. Rev. Stat § 30.920(3), is misplaced. Unlike a carbonated beverage and the bottle it comes in, plumbing valves and potable water are not an "integrated whole" packaged and sold together that may appropriately be considered a single product. Restatement (Second) of Torts § 402A cmt. h (1965).

Victaulic's pre-trial motions for exclusion of this evidence were insufficient to preserve the objection. Absent contemporaneous objection, a party may rest on its pre-trial motion to preserve an evidentiary objection only if the court makes a "thorough examination of the objection," followed by an "explicit and definitive" ruling on it. *United States v. Archdale*, 229 F.3d 861, 864-65 (9th Cir. 2000). Here, far from being explicit or definitive, the district court ruled that it would allow "appropriate expert testimony" on health concerns relating to the black particles but would "consider any additional specific objections at trial." Lacking an "explicit and definitive" ruling on its objection, Victaulic failed to preserve it at trial. *See McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 954 (9th Cir. 2011) (trial court's denial of a motion "with leave to renew any objections at trial" was not an explicit and definitive ruling and did not preserve the defendant's evidentiary objection).

Alternatively, even if the objection had not been waived, there was no abuse of discretion in admitting the evidence. Expert testimony about the health risks of carbon black was pertinent to establishing that Victaulic's products contaminated Benson's potable water system and thus damaged its property. The health-related evidence thus "logically advance[d] a material aspect" of Benson's case and met the "low" bar for relevance. *Messick v. Novartis Pharm. Corp.*, 747 F.3d 1193,

5

1196 (9th Cir. 2014) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1315 (9th Cir. 1995)).

Victaulic's undue prejudice arguments, if not waived, do not succeed. Given the relevance of the health-related evidence, the district court did not abuse its discretion in finding that its probative value was not substantially outweighed by the danger of unfair prejudice. *See* Fed. R. Evid. 403. There was no error, plain or otherwise, in the admission of this evidence.

3.     Nor did the district court abuse its discretion in admitting evidence of black particles in other buildings in Portland. At trial, Benson's witness testified he had observed black particles in each of the 29 other buildings in Portland with Victaulic plumbing components that he had visited, but not in any building he had visited with non-Victaulic parts. Victaulic argues that Benson needed to prove that the plumbing systems in these other buildings were "substantially similar" to Benson Tower's plumbing for that evidence to be relevant to Benson's claims. *Cooper v. Firestone Tire and Rubber Co.*, 945 F.2d 1103, 1105 (9th Cir. 1991). But *Cooper* is clear that other products need to be substantially similar only when the plaintiff is using evidence relating to them as "*direct* proof of negligence, a design defect, or notice of the defect." *Id.* (emphasis added).

6

Benson did not introduce the evidence of black particles in other buildings as "direct proof" that Victaulic's valves and couplings had degraded and leached into Benson's water supply. Rather, Benson put on this evidence to rebut Victaulic's theory that the black particles came from degrading elastomers in Portland's municipal water pipes rather than from Victaulic's products. The evidence was relevant to, and probative of, whether the black particles came from an external source rather than the valves and couplings in Benson Tower. Victaulic was aware that it could "open the door" to such evidence by suggesting that the black particles came from a source other than its products, and it did so during cross-examination of one of Benson's experts. Because the evidence was not used as direct proof of Victaulic's negligence or a defect in its products, its admission was not error. *See Cooper*, 945 F.2d at 1105 (evidence relating to dissimilar accidents was not erroneously admitted because it was used for impeachment rather than as direct proof of the plaintiff's claim).

Finally, even if the district court erred in admitting the "other buildings" evidence, the error was harmless. Sifting out the evidence related to other buildings, Benson has shown that "it is more probable than not that the jury would have reached the same verdict even if the evidence had not been admitted." *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 465 (9th Cir. 2014) (en banc)

7

(citation and internal quotations omitted). Several witnesses testified about the degradation of Victaulic's products, the potential dangers of this degradation, and the damage to Benson's potable water supply. Given this evidence, it is unlikely the jury would have decided otherwise if the other buildings evidence had been excluded from trial.

**AFFIRMED.**